NELLIE R. CAVANAGH, Guardian, et al., Appellees, v. FRANK A. O'CONNOR et al., Appellants.

TRUSTS:  Action to Enforce—Law (?) or Equity (?). A trustee who has breached his agreement to furnish the trustor with the necessities of life may be sued *at law* by the trustor's guardian to recover a sum sufficient to discharge obligations incurred by the guardian in furnishing such necessaries to his ward.

*Appeal from Chickasaw District Court.*—W. J. SPRINGER, Judge.

MARCH 23, 1920.

REHEARING DENIED JULY 6, 1920.

ACTION to recover for board and lodging furnished one Runion, a man of unsound mind. The opinion states the facts out of which the controversy arises. A motion was made to transfer to equity, and overruled. From this ruling the defendants appeal.—*Affirmed.*

*Hurd, Lenehan, Smith & O'Connor,* for appellants.

*R. Feyerbend,* for appellees.

GAYNOR, J.—This is an appeal from the action of the court in refusing to sustain a motion to transfer the cause to the equity side of the calendar for trial.

For a better understanding of the immediate facts out of which this controversy arises, it is necessary that we go back to a time when no relationship existed between these parties at all, and neither owed the other obligation or duty, and then to a time when the obligations and duties involved in this suit arose, and the circumstances out of which the new relationship arose. In 1915, Runion lived in the town of New Hampton. He was then about 93 years of age, and feeble in health. He was possessed of considerable property, both real and personal. The defendant O'Connor was an attorney, residing in the city of New Hampton, and Kennedy, a banker. About this time, the Servant Sisters of the Holy Ghost, a foreign corporation, contemplated the erection of a hospital in that city. In this enterprise, Runion seems to have become interested, and out of this came a desire to contribute something of his substance to the enterprise. Runion and the defendants were all members of the Catholic Church, in good standing. O'Connor and Kennedy were also deeply interested in the furtherance of the purpose of the Servant Sisters of the Holy Ghost, and they, too, desired to see the enterprise succeed. Runion was approached by these defendants, we presume as others were approached, and solicited to do

something, in a charitable way, for the benefit of this enterprise. Without entering into a discussion of the influences that were brought to bear upon Runion to induce him to contribute to the enterprise, it appears that warranty deeds, in the usual form, were executed by him, conveying to these defendants all his real estate, consisting of 480 acres in Texas and a residence in New Hampton. He also transferred to them all personal property then owned by him. As part of the same transaction, and evidently for the purpose of evidencing the thought of the parties touching the enterprise contemplated by the Servant Sisters of the Holy Ghost, a trust agreement was entered into between him and these defendants, in which they were designated as trustees, to manage and dispose of all the property thus transferred to them by Runion. This trust agreement, in its preamble, recites that:

"Whereas, a movement is on foot in New Hampton, Iowa, for the erection of a hospital in said city by the Servant Sisters of the Holy Ghost,  *  *  *  and whereas, Runion is desirous of providing for his own care and comfort and necessities so long as he shall live and at the same time assisting in said enterprise; it is therefore hereby agreed, by and between Runion, party of the first part, and W. J. Kennedy and F. A. O'Connor, parties of the second part, that said second parties are hereby appointed and constituted trustees of the property of the party of the first part to handle, manage and dispose of the same, under the conditions and terms herein provided."

Then, after reciting the conveyance of the property to said O'Connor and Kennedy, it recites as follows:

"It is further agreed that second parties shall hold the legal title to the land above described, free from any trust limitations, with authority to sell and convert the same into cash as soon as they shall deem it expedient to do so, the intention being to authorize and direct such sale and conversion at the earliest moment consistent with good business judgment; and second parties are hereby authorized and empowered to convey said property to any purchaser or pur-

chasers thereof free from the terms and limitations of this
trust, and without any appraisement, order of court or
other restrictions of any kind.

"It is further agreed that second parties, as trustees,
shall out of the funds or proceeds arising from the sale of
said property, pay over to first party the sum of $1,000
for such special purposes and use as first party may desire
to make of same, and shall pay all indebtedness owing by
first party at this time, including any mortgages against
any of said property; that said second parties as trustees,
shall hold the remainder of said funds in their hands, of
such time and purposes as are herein provided; and so
long as said property or the funds derived from the sale
thereof remain in the hands of second parties under this
agreement, second parties agree to hold same in trust, and
from said property or funds or from the income therefrom,
to provide first party with all necessary board, lodging,
clothing, washing and laundry, nursing, medical attend-
ance, and a nominal amount for pocket money from time
to time, so long as he shall live, and to furnish him a proper
and respectable burial in case of his death; all the re-
mainder of said property or the funds derived from the
sale thereof shall be devoted to hospital purposes as herein-
after provided.

"Second parties are hereby authorized to apply proceeds
from the sale of said property in whole or in part, or the
property itself, (so far as same may remain unsold) to aid
the said Servant Sisters of the Holy Ghost in the erection
of a hospital in New Hampton, Iowa, and in the purchase
of a proper site therefor; provided, however, (if first party
be living at said time) that before any of said property or
funds shall be used for hospital purposes as above pro-
vided, said Servant Sisters of the Holy Ghost shall first
legally obligate themselves by written contract to continue
to furnish first party all necessary board, lodging, clothing,
washing and laundry, nursing, medical attendance, and a
nominal amount for pocket money from time to time so long
as he shall live, and to furnish him respectable and proper

burial in case of his death and said contract shall provide that first party shall be assigned a suitable and comfortable room in said hospital."

It will be noted that, in this agreement, there is no time specified in which this hospital shall be erected. There is no time provided in which the Servant Sisters of the Holy Ghost shall obligate themselves to perform any of the conditions of this agreement. The obligation to furnish to Runion the things which the contract calls for, and to which he is entitled because of the agreement, was assumed by these defendants, O'Connor and Kennedy, and that duty rests upon them until such time as they may be relieved by a transfer of the property to the Servant Sisters of the Holy Ghost. It does not appear that the Servant Sisters of the Holy Ghost have assumed any of the obligations that this contract calls for. It does not appear that the hospital has been erected, or any provision made for his entertainment at a hospital. No obligation, therefore, rests upon the Servant Sisters of the Holy Ghost now, and none can arise until the property is transferred to them, and they have assumed the obligations. We have to deal, therefore, only with the obligation assumed by the defendants O'Connor and Kennedy. It will be further noted that the primary purpose in the transfer of the property to O'Connor and Kennedy, and in the agreement supplemental thereto, was to secure to Runion the necessities of life, so long as he should live. His agreement to assist in the enterprise was, therefore, subordinated to this principal purpose, and was acquiesced in by the parties to the agreement. The obligation assumed was in consideration of the conveyance to them of this property, and the execution of this agreement. They obligated themselves, first, to pay over to Runion the sum of $1,000; second, to pay all his indebtedness, including any mortgages against the property; and third, to provide him with all necessary board, lodging, clothing, washing and laundry, nursing, medical attendance, and a nominal amount of pocket money, from time to time, so long as he should live, and to furnish him a proper and

respectable burial at his death. It will be noted that it is only the remainder of the property, or the fund derived from the sale, that is to be devoted to hospital purposes. It will be noted that it is further provided that, before any of the property or funds shall be used for hospital purposes, the Servant Sisters of the Holy Ghost shall first legally obligate themselves, by written contract, to continue to furnish the first party the things agreed to be furnished by O'Connor and Kennedy.

The petition recites that, after the contract was executed, and on or about the 1st of November, the defendants O'Connor and Kennedy agreed with Runion that he might select a place in which to live, where he could receive the care and comforts which they had contracted to give to him; that he selected a home in a private family, and in this home received the comforts and the necessities contemplated by the contract. It recites further that he has been in this home for a considerable length of time, and has been receiving there the things which the defendants contracted to give him; that the defendants have performed no part of the conditions of the contract on their part to be performed, and have given to Runion none of the things which the contract calls upon them to furnish, though demand has been made therefor.

The action is brought to recover from these defendants a sum of money sufficient to liquidate the obligations which the defendants assumed to discharge in his care and keeping since the execution of the agreement. So far as this record is concerned, the only question to be determined is the amount which these defendants should be called upon to pay. The action is brought by the guardian of his property, and it is brought to enforce a contract of obligation —an obligation to provide Runion with all necessary board, lodging, clothing, washing, etc. We take it that this necessary board, lodging, etc., were furnished Runion at the instance of his guardian. Runion is now of unsound mind, and under guardianship. The agreement to furnish him these things was an agreement with Runion. His guardian

stands in his place, and seeks to enforce this agreement. It involves no equitable features. It involves simply the enforcement of a contractual obligation, of which the law takes cognizance. There is clearly a privity contract between these trustees and Runion. The Servant Sisters of the Holy Ghost can have no interest in the fund until such time as the contractual obligations now existing between Runion and the defendants have been fully discharged. There is no need of any accounting. All the rights of the Servant Sisters of the Holy Ghost in this. contract are subordinate to the rights of Runion, which are now sought to be enforced. While a court of equity might have taken cognizance of this controversy, and, by decree, enforced the rights of this plaintiff against these defendants, yet its jurisdiction is not exclusive. Plaintiff, having invoked the aid of a court of law, is entitled to have his rights adjudged and adjusted in a court of law. The action is, in its nature, an action for money had and received for the use and benefit of this defendant, and such actions are not solely cognizable in a court of equity. It is the general holding that, where money is received for the use and benefit of another, and an express promise is made to pay it, an action at law may be maintained for its recovery. Of course, it is true, ordinarily, that an action at law for money had and received will not lie against the trustees while the trust is still open, but, where the instrument creating the trust contains an express promise to pay to the creator of the trust for his use and benefit, a law court will enforce the promise, and clearly so when the amount which the contract calls for is easily and definitely ascertainable. Thus it has been held that, where there is an express promise by the trustee to pay the beneficiary a certain part of the income, assumpsit will lie upon the promise. See *Weston v. Barker*, 12 Johns. (N. Y.) *276; *Dias v. Brunell's Exr.*, 24 Wend. (N. Y.) 9; *Roper v. Holland*, 3 Adolphus & Ellis 99. Of course, these authorities are not strictly in point, but are suggestive on the point here under consideration.

There is no reason suggested in this record, either legal

or equitable, why this promise to the old man has not been performed. We take it the property has been converted into money, and is now in the hands of the trustees. If the only objection to the payment is that the amount demanded is excessive, that matter can be determined in a court of law, as well as in a court of equity. We see no reason for interfering with the action of the court in overruling the motion. Its action is, therefore,—*Affirmed.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.