WOODMANSEE and another, Appellants, vs. SCHMITZ, Respondent.

*September 15—October 14, 1930.*

For the appellants there was a brief by *Fish, Marshutz & Hoffman*, attorneys, and *I. A. Fish* of counsel, all of Milwaukee, and oral argument by *Mr. Fish*.

*Edwin J. Gross* of Milwaukee, for the respondent.

OWEN, J. On the 23d day of January, 1919, the defendant A. J. Schmitz executed and delivered to the plaintiffs John F. Woodmansee and Janet E. Woodmansee a receipt reading as follows:

"Received of J. F. Woodmansee and Janet Woodmansee two thousand (2,000) shares of the capital stock of the Sommers & Sons Company to be delivered to F. X. Sommers, or some person whom he may designate, upon the payment of a seventy-five hundred dollar note and interest held by the Merchants & Manufacturers Bank, executed by the Sommers & Sons Company and indorsed as an accommodation indorser by J. F. Woodmansee, and the surrender of the collaterals held by said bank as security for the payment of said note belonging to the said J. F. Woodmansee to him and the delivery of a promissory note of F. X. Sommers executed by him to secure the payment of $3,000 and

interest to the said J. F. Woodmansee, and the delivery to said Woodmansee of 300 shares of the capital stock of said Sommers & Sons Company as collateral security for the payment of said last mentioned note."

The 2,000 shares of stock were promptly transferred to Louis Shafrin, Max Shafrin, and William F. Schmitz. The $7,500 note at the bank was paid, and the securities mentioned were returned to J. F. Woodmansee. F. X. Sommers executed the note for $3,000 payable to J. F. Woodmansee, and delivered the same to A. J. Schmitz, but failed to deliver the 300 shares of the capital stock of the Sommers & Sons Company as collateral security to said note. The plaintiffs retained the collateral realized upon the payment of the $7,500 note, and on April 23, 1919, by letter, demanded of the defendant a return of the 2,000 shares of stock. At such time they knew that the stock had been transferred to the Shafrins and W. F. Schmitz. The defendant made no reply to the letter.

This action was commenced by the plaintiffs, praying that the defendant be required to account for the 2,000 shares of the capital stock of the Sommers & Sons Company, and for such other and further relief as may be just and equitable in the premises. On the trial John F. Woodmansee testified: "I am asking for the value of the 300 shares of stock. My accounting should be for the $3,000 that I could have recovered on my note if I could have gotten it. I claim I lost that $3,000. I am not claiming the 2,000 shares."

The trial court held that the cause of action was barred by the six-year statute of limitations. This ruling is challenged upon this appeal. It is contended by appellants that the action is cognizable solely by a court of equity, and falls within the provisions of sec. 330.18 (4), Stats., which requires such actions to be brought within ten years. The argument is that the defendant became the trustee of an ex-

press trust, and that the controversy falls within the exclusive jurisdiction of a court of equity.

It is true that in many respects courts of equity have primary and exclusive jurisdiction over controversies arising out of trust and trust relations. The rule as frequently quoted is stated in 27 Am. & Eng. Ency. of Law (1st ed.) 271, as follows:

"The execution and enforcement of trusts and trust obligations, the adjustment of disputed rights under them, the investigation and settlement of accounts between parties in confidential relations, the establishing of the existence of a fiduciary relationship, are questions which fall naturally within the primary and exclusive jurisdiction of chancery courts."

And in 39 Cyc. at p. 588 it is said:

"The law is well settled that a court of equity has jurisdiction, upon the application of persons interested, of all questions relative to the establishment, enforcement, and protection and preservation of a trust on real or personal property."

Note the restrictions upon the exclusive field of a court of equity. Such field is limited to the establishment, enforcement, and protection and preservation of the trust. That many controversies arising between trustees and *cestuis que trustent* are and always have been cognizable by courts of law, is not to be questioned. At any rate, it has always been so considered by this court. Thus in *Harrigan v. Gilchrist,* 121 Wis. 127, at p. 242 (99 N. W. 909), after quoting the rule above stated, it is said:

"It is not to be understood by the foregoing that no action can be maintained by a *cestui que trust* in any circumstances against a trustee of any sort except in equity. Such actions may be brought, are brought, under a very great variety of cases. The purpose thereof, though, is not to establish and administer or enforce a trust. That is a special field of ju-

risdictional activity which originated and took its form in courts of chancery and has always been deemed peculiarly a function of such courts."

At an early day Chancellor KENT expressed himself upon this question as follows:

"I cannot assent to the proposition that all cases of direct and express trust, and arising between trustee and *cestui que trust,* are to be withdrawn from the operation of the statute of limitations, notwithstanding a clear and certain remedy exists at law. The word 'trust' is often used in a very broad and comprehensive sense. Every deposit is a direct trust. Every person who receives money to be paid to another, or to be applied to a particular purpose to which he does not apply it, is a trustee, and may be sued either at law for money had and received, or in equity, as a trustee, for a breach of trust." *Kane v. Bloodgood,* 7 Johns. Ch. 90, 110.

The views of the distinguished chancellor, expressed in the opinion in that case, have met with the approval of this court upon at least two occasions. *Fawcett v. Fawcett,* 85 Wis. 332, 55 N. W. 405; *Boyd v. Mutual Fire Asso.* 116 Wis. 155, 90 N. W. 1086, 94 N. W. 171. That a court of law may deal with matters growing out of trust relations is recognized in *Cruse v. Kidd,* 195 Ala. 22, 70 South. 166, 2 A. L. R. 36; *Bennett v. Preston,* 17 Ind. 291, and was held in *Cavanagh v. O'Connor,* 189 Iowa, 171, 176 N. W. 881.

It may be conceded that the transaction under consideration gave rise to a trust relation, but the trust is the simplest kind of a trust and is such as arises out of innumerable daily business transactions. No question is presented with reference to the establishment, enforcement, and protection and preservation of a trust. The defendant simply breached his trust when he turned over the 2,000 shares of the plaintiffs' stock without securing the 300 shares of stock as collateral for the $3,000 note, as stipulated in the receipt given by defendant. An action for damages immediately arose

in favor of the plaintiffs against the defendant for the value of the 300 shares of stock. The title to the 2,000 shares having passed to innocent purchasers, and the plaintiffs having kept the greater portion which was to accrue to them by the transaction, namely, the liquidation of the $7,500 note at the bank and the surrender of the individual collateral deposited to secure the guaranty on said note, it would seem the only remedy which any court may afford them was damages resulting from the failure of the defendant to secure and deliver to them the 300 shares of stock. Of such an action a court of law had jurisdiction, and such an action was barred by the six-year statute of limitations.

*By the Court.*—Judgment affirmed.