**HOWELL v. DEADY et al.**

**No. 9641.**

District Court, D. Oregon.

Nov. 6, 1939.

106

See, also, 48 F.Supp. 123.

Maguire, Shields, Morrison & Biggs and Donald Grant, all of Portland, Or., for plaintiff.

Simon, Gearin, Humphreys & Freed and Nicholas Jaureguy, all of Portland, Or., for defendants.

JAMES ALGER FEE, District Judge.

A motion to dismiss was filed against a complaint filed by Richard Howell, as legatee of Charlotte Howell Deady, seeking an accounting against the First National Bank, by substitution a trustee, and Matthew Edward Deady and Hanover Deady as to certain income from real property devised under the will of Lucy A. H. Deady, deceased.

The will is set forth in the complaint and reads as follows:

"In the Name of God, Amen: I, Lucy A. H. Deady, of Portland, Oregon, widow of the later Matthew P. Deady, make this the following my Last Will and Testament, that is to say:

"First: I will and direct that all my just debts and funeral expenses be paid.

"Second: I request and direct that my body be interred by the side of my late husband, Matthew P. Deady, in Riverview Cemetery.

"Third: Subject to the conditions, provisions and charges thereon hereinafter made, I give, devise and bequeath to my son Henderson Brooke Deady, the undivided two-thirds of Lot numbered One (1) in Block numbered Two Hundred and

Twelve (212) of the City of Portland, Oregon.

"Fourth: Subject to like conditions, provisions and charges thereon, I give, devise and bequeath to my two grandsons, Matthew Edward Deady and Hanover Deady, the remaining undivided one-third of said Lot 1, Block 212, Portland, Oregon.

"Fifth: I direct that from the income derived from said Lot numbered 1 in Block numbered 212, there be paid to Mary E. Deady, widow of my deceased son, Edward Nesbith Deady, the sum of $150.00 per month during the term of her natural life, and that there be paid to Marye Thompson Deady, who was the wife of my son Paul R. Deady, the sum of $75.00 per month, so long as she survives and remains unmarried.

"I further direct that the remainder of the income derived from the real property, shall be distributed as follows:

"(a) To the payment to each of my grandsons,—Matthew Edward Deady and Hanover Deady, the sum of $100.00 per month, and the remainder of said income shall be paid to my son, Henderson Brooke Deady. Such division of the income derived from the said real property to continue during the lifetime of my son, Henderson Brooke Deady.

"Provided further, that from the income derived from said real property, and before the distribution of the same, there shall be paid therefrom, the inheritance tax properly chargeable against my estate, or the legacies or divisions made, and after the payment of such inheritance tax, there shall be created a sinking fund of not less than $1000.00 nor more than $2500.00 per year, in discretion of my Executors, for the purpose of retiring and paying off the mortgage debt created and existing against said Lot numbered 1 Block numbered 212.

"Sixth: I will and direct that said Lot numbered One (1) in Block numbered Two Hundred and Twelve (212), Portland, Oregon, shall neither be mortgaged, partitioned, sold, or otherwise encumbered by my devisees except for the improvement of the same, until the expiration of twenty-five (25) years from the date of my decease, and the devises to my said son Henderson Brooke Deady, and to my grandsons, Matthew Edward Deady and Hanover Deady, contained in items three and four hereof, are upon the express condition that said property shall not be disposed of or encumbered during the period aforesaid. Provided, however, that said real property may be encumbered by mortgage to renew the present mortgage, or such portion thereof as may from time to time remain unpaid.

"Seventh: That in the event my son Henderson Brooke Deady die without issue, the undivided two-thirds of Lot numbered 1 in Block numbered 212, shall vest in my grandsons hereinbefore named, and I give and devise the same to my said grandsons.

"Eighth: I authorize and permit my son Henderson Brooke Deady, if he so elects to do, to bequeath by last Will and Testament to his wife, (if he then has a wife,) the income that would have been d-rived by him if living, from the two-thirds of Lot 1 Block 212, City of Portland. Such bequest to continue only during the life time of the widow of said Henderson Brooke Deady.

"Ninth: The monthly payments directed to be made to my grandsons, and the residue of income directed to be paid to my son Henderson Brooke Deady, provided for in Item Fifth of this Will, shall continue for a period of ten years after my death, and thereupon and thereafter the net income derived from said Lot 1 in Block 212 of the City of Portland, shall follow the title and ownership of said real property, and shall be distributed, two-thirds to my son Henderson Brooke Deady, and the remaining one-Third to my two grandsons, subject to the payment of the legacies bequeathed to Mary E. Deady and Marye Thompson Deady, in said Fifth item specified. It is my wish that my executors provide out of the residue of the income bequeathed to my son, Henderson Brooke Deady, in Item Fifth, funds at their discretion, to further any legitimate or worthy ambition or aim, other than business ventures, which my grandsons Matthew Paul and Hanover or either of them, may undertake or entertain.

"Tenth: I give, devise and bequeath to my son Henderson Brooke Deady, that certain parcel of real estate situated and being in Mountain View Park heretofore conveyed to me by my son Edward Nesmith Deady.

"Eleventh: I give and bequeath to my grandson Hanover Deady my law library.

"Twelfth: All the rest, residue and remainder of the property of which I shall be seized, of whatever nature and where-

108

soever situated, I give, devise and bequeath to my son Henderson Brooke Deady and to my grandsons Matthew Edward Deady and Hanover Deady; to Henderson Brooke Deady the undivided two-thirds thereof, and to Matthew ~~Brooke~~ Edward Deady the undivided one-sixth thereof, and to Hanover Deady the remaining undivided one-sixth thereof.

C.V.D.
J.V.B.

"Lastly: I hereby nominate and appoint my son ·Henderson Brooke Deady, and my friend Joseph Simon, of Portland, Oregon, to be the Executors of this my last Will and Testament, and also Trustees to manage my estate, and I direct that no bond or security shall be required of them as such Executors or Trustees. I also direct that in the event of the death, resignation or disqualification of all of my said Executors, and Trustees herein named, the Security Savings and Trust Company, of Portland, Oregon, shall then complete the execution of said Estate, and serve as Trustee thereof.

"I hereby revoke all former Wills by me at any time made.

"In Witness Whereof, I have hereunto set my hand and seal this the 29th., day of July, A. D. 1920, at Portland, Oregon.

"(Signed)

Lucy A. H. Deady (Seal)

"The above instrument of writing was signed by Lucy A. H. Deady, the Testatrix therein named, in the presence of us, who at her request and in her presence, and in the presence of each other, have subscribed our names as witnesses thereto.

"(Signed) Chester V. Dolph Residing at Portland, Or.

"(Signed) J. V. Beach Residing at Portland, Or.".

The complaint sets out certain salient facts which are outlined below. Lucy A. H. Deady made this will in 1920, at which time she was owner in fee simple of the real property in question. She died August 29, 1923. Henderson Brooke Deady married Charlotte Howell Deady and died without issue May 28, 1933. His wife died

July 12, 1935. Plaintiff is her son and heir. The estate of Lucy A. H. Deady was closed March 6, 1936. The Bank has been acting as sole trustee by substitution after the death of the two trustees named in the will.

In the construction of a will dealing with realty situate in Oregon, the federal court must follow rules of property established by the highest court of that state.[1] If the Supreme Court of Oregon have not spoken, then the federal court must, in the determination of the instant case, follow the principle which the state court would have applied if the cause had been presented there.[2] Great weight has been given in all opinions by the Supreme Court of Oregon to the statutory rule that the pole-star of interpretation of a will is the intention of the testator.[3] The various canons of construction applied at common law or in other jurisdictions have, on that account, been less rigidly followed in this state, despite the theory that canons furnish a formalistic guide to the intention of the testator where it is not clear from the context. For although the language of a testament is usually not that of the testator, but rather that of a technical draughtsman which may not reflect the actual intent of the maker, all the context of the document is considered[4] by that court to find the intention reflected by the artificial language.[5] The canons are often discussed, but generally an attempt is made in each instance to discover from indicia the actual intention of the maker.

The intention of the testatrix in the will at bar is not clear, except in certain features. She unquestionably intended to control her property for a long period of time after her death. However, she also intended to give specific items of the property to her sons and grandsons, subject to this control.

By the third subdivision of the will Mrs. Deady gave two-thirds of Lot No. 1 to Henderson Brooke Deady. By the fourth paragraph she gave the remaining one-third of Lot 1 to Matthew Edward

---

[1] Clarke v. Clarke, 178 U.S. 186, 191, 20 S.Ct. 873, 44 L.Ed. 1028; Barber v. Pittsburgh, Fort Wayne & Chicago R. Co., 166 U.S. 83, 17 S.Ct. 488, 41 L.Ed. 925.

[2] Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487.

[3] Oregon Code 1930, § 10-531; Stubbs v. Abel, 114 Or. 610, 619, 233 P. 852,

236 P. 505; Love v. Walker, 59 Or. 95, 107, 115 P. 296; Bilyeu v. Crouch, 96 Or. 66, 69, 189 P. 222.

[4] Bilyeu v. Crouch, supra, 96 Or. at page 69, 189 P. 222; Gildersleeve v. Lee, 100 Or. 578, 198 P. 246, 36 A.L.R. 1166; Fields v. Fields, 139 Or. 41, 3 P.2d 771, 7 P.2d 975; Rose City Co. v. Langloe, 141 Or. 242, 244, 16 P.2d 22.

[5] See Stubbs v. Abel, supra.

Deady and Hanover Deady. The gift to Henderson Brooke Deady is "subject to the conditions, provisions and charges thereon hereinafter made", and that to Matthew Edward Deady and Hanover Deady is "subject to like conditions, provisions and charges thereon". The words of gift in each of these two separate devises are couched in similar language and should be given like effect as to the time of the investment of the respective devisees with title and as to the character of the interest given. It must be concluded as to each parcel the testatrix was intending to convey a fee title,[6] and that the language conveying this intention is direct and positive. The fee in each instance was subject to the stipulations expressly mentioned which now must be discussed.

 In Oregon, by interpretation of a statute,[7] reinforced by the common law rule, where an estate in fee is given in one clause of a will in clear and explicit terms, the interest which the devisee thus obtains cannot be taken away or diminished by any subsequent vague or general expression of doubtful import or by any inference deducible therefrom that may be repugnant to the estate given.[8] It must then be concluded that the "conditions, provisions and charges" were mentioned, not for the purpose of diminishing the fee title expressly given in either instance, but for the purpose of subjecting that title to the "charges" contained in the fifth subdivision, to the "provision" also contained in that item for the creation of a sinking fund to pay a mortgage on the real estate, and to the "condition" contained in the sixth subdivision to the effect that "the devises to my said son Henderson Brooke Deady and to my grandsons Matthew Edward Deady and Hanover Deady contained in items three and four thereof are upon the express condition that said property shall not be disposed of or encumbered during the period" of twenty-five years. Nothing is said about

other disposition of the title on any contingency whatsoever.[9] If there had been, the fee given to the grandsons would not have been subjected to a like limitation because their title was absolute. These clauses have no reference whatever to the seventh paragraph which carries a further disposition relating to the portion given to Henderson Brooke Deady alone. The inference to be drawn from the language so far considered is that a fee simple absolute was given to each parcel at the time of the death of Mrs. Deady, subject only to these stipulations so specifically mentioned.

The contest here arises because of this seventh item of the will, which is imbedded among a series of provisions relating to the disposition of the income from the real property and not to the title and at a point where one might expect a clause dealing with the disposition of the income upon the death of her son. This clause reads as follows:

"That in the event my son Henderson Brooke Deady die without issue the undivided two-thirds of Lot numbered 1 in Block numbered 212, shall vest in my grandsons hereinbefore named, and I give and devise the same to my said grandsons."

 If this provision had been clear and direct and made the fee given to Henderson Brooke Deady determinable on some event in the future, full effect would have been given to it, notwithstanding the language of clause three.[10] The draughtsman could have easily framed the wording so as to remove all doubt. As the will reads now, however, the construction is doubtful in three respects, (1) whether the fee was to be cut down, (2) when the devise over was to take effect, (3) whether definite or indefinite failure of issue was meant.

The first question as to whether the fee was to be cut down is cardinal. The indications from the first paragraphs are strongly that it should not be and that the son was

---

[6] "Heirs" or other words inheritance are not necessary to convey an estate in fee simple. Oregon Code 1930, § 63-105; See Palmateer v. Reid, 121 Or. 179, 184, 185, 254 P. 359.

[7] Oregon Code 1930, § 10-528; Imbrie v. Hartrampf, 100 Or. 589, 595, 198 P. 521; Irvine v. Irvine, 69 Or. 187, 190, 136 P. 18.

[8] Friswold v. United States National Bank of La Grande, 122 Or. 246, 251, 257 P. 818.

[9] See Stubbs v. Abel, supra, 114 Or.

at page 633, 233 P. 852, 236 P. 505. The clause was "subject to such disposition as I may hereinafter make of any portion thereof". If the reference to the provisions of the seventh paragraph of the will were direct and positive, the rule as to cutting down the fee would be weakened in application.

[10] See Imbrie v. Hartrampf, supra, 100 Or. at page 598, 601, 198 P. 521; Stubbs v. Abel, supra, 114 Or. at pages 631, 632, 233 P. 852, 236 P. 505; Rowland v. Warren, 10 Or. 129, 131.

vested with fee simple title, as has been noted.

The position of this clause and the language thereof do not make a contrary intent clear, but serve only to introduce confusion. Controversies innumerable have been waged over the words "die without issue". The construction thereof has changed according to the time, the jurisdiction, the statutory background and public policy during the last one hundred fifty years. The task devolves upon this court, then, of fixing a date of distribution as to this particular interest in the real property and of determining whether an executory devise based upon that date of distribution can be carried out in view of the public policy of the state of Oregon. In this phrase there are the second and third potential foundations for controversy, the effective time of death and the meaning of "issue".

As to the effective time of death, it is possible that a testator may have meant the gift over to take effect on "death at any time" of the first donee. Again, the maker of the will may have so designated an "intermediate date" that the gift over would take effect, if at all, dependent upon an event which might happen after the death of the maker, but not necessarily after the death of the primary donee. Finally, the testator may have meant that the devise should take effect, as a "substitutional" gift, upon the happening of an event before his own death or not at all.

 As to the third potential controversy, the Oregon Supreme Court has apparently adopted the rule that an executory devise based upon indefinite failure of issue is void.[11] If, then, that court would construe the words "die without issue" to mean a limitation based upon an "indefinite failure of issue" as do many American courts, where no statute controls,[12] the gift over to the grandsons would be avoided.

 A gift to "issue" is usually construed to include all of the lineal descendants of the ancestor. Death without issue at common law was construed to mean an "indefinite failure of issue" until the rule was changed by statute of England in 1837. The common law rule was followed generally in the United States up until about 1850, when statutes construing these words, to import "definite failure of issue", were adopted in many states, and in some states the same result was reached by judicial construction.[13] In a few jurisdictions where there is no statute, the common law rule is still adhered to,[14] although violent criticism of the doctrine and its introduction on American soil has been made.[15] In some states, of which Oregon is one, a grant of a fee tail is construed as a fee simple.

An executory devise based upon an "indefinite failure" is, generally speaking, void. To escape this common law construction of these words importing an "indefinite failure of issue", many American courts adopted the device of construing "die without issue" to mean the death of the primary donee in the life of the testator and the gift over as "substitutional" in character. Therefore, if the first taker outlived the testator, he took in fee.

These shifting principles and the application thereof in Oregon, with great emphasis upon the intention of the testator if it can be otherwise discovered, lay the foundation for construction. Without decision that this phrase imports an "indefinite failure of issue" in this jurisdiction, attention will be directed to the second point and an effort made to solve the problem of date of distribution with reference to the death of Henderson Brooke Deady.

There are many jurisdictions of the United States where the seventh clause of the will would be construed to mean that the fee title vested in Henderson Brooke Deady would pass on his death, whenever that occurred, to the grandsons, if no other intention were expressed as to this by the will.[16] In Oregon, no canon of construc-

---

11 Imbrie v. Hartrampf, supra, 100 Or. at page 599, 198 P. 521.

12 Warren, "Gifts Over on Death Without Issue", 39 Yale Law Journal, 332.

13 Moore v. Moore, 12 B.Mon. 651, 51 Ky. 651.

14 Huxford v. Milligan, 50 Ind. 542; Mercantile Trust Co. v. Adams, 95 Ark. 333, 129 S.W. 1101; McCarthy v. Walsh, 123 Me. 157, 122 A. 406.

15 "The Abolition of Estates Tail", 21 Virginia Law Review, 286; Warren, "Gifts Over on Death Without Issue", supra, 342; "Definite and Indefinite Failure of Issue", 6 Columbia Law Review, 175, 182.

16 Britton v. Thornton, 112 U.S. 526, 533, 5 S.Ct. 291, 28 L.Ed. 816; Boshell v. Boshell, 218 Ala. 320, 118 So. 553; Briggs v. Hopkins, 103 Ohio St. 321, 132 N.E. 843.

tion is closely followed and there is no clear expression that such rule ever would be applied. An attempt would be made to discover the intent from the context. The Oregon decisions can not be reconciled on any other basis. In Rowland v. Warren, supra, the court held a purchaser from a devisee who died leaving children, under a will which provided for an executory devise over, if she died without children, took a fee simple title. In Bilyeu v. Crouch, supra, there was a life estate to A, remainder to B and the heirs male of his body, in default of male children to the daughters of the testator, and in default of issue to the sisters of B. The court disregards the fact that what is dealt with is a remainder after a life estate, and holds the intention of the testator was to give the fee to the sisters in case of death of B without children. Although the present question is discussed it is clear the facts were not such as called for application of any principles involved here,[17] since there was a precedent life estate, and the court determines from the complicated language of the limitation that B was to take the fee if and only if he had heirs of his body.

Imbrie v. Hartrampf, supra, is very similar in its facts and the provisions of the will to the case at bar. There a gift of a fee to Ralph was followed by a restriction on alienation until the devisee arrived at forty years of age, coupled with an executory devise on breach of condition. There were devises of fee title to other lands to others and a residuary devise. In a separate paragraph there is a provision that if any devisee "die without leaving lineal descendants, children or grandchildren" then his share should be equally divided. The testator died in 1897. In 1920, after Ralph had attained the age of forty without violating the restriction against alienation, the court held he could convey fee simple title.

The devise is "in full of any indebtedness" [100 Or. 589, 198 P. 522], from testator to Ralph. This is probably evidentiary of an intention to convey the fee. But no distinction between the case there and that at bar can be drawn, because the intent to give the fee is as clearly indicated here. The court found against the "death at any time" rule upon a situation quite comparable to that at bar. In so doing, the court quoted from Britton v. Thornton, supra, apparently with the idea that since the condition against alienation had expired the excerpt was applicable and supported the "intermediate date" of expiration which had been fulfilled. The court had theretofore expressed a decided preference for the "substitutional rule" and had indicated that it should be applied to the situation. The meat of the decision is that such a situation indicates a testamentary intent to give a fee simple absolute and repudiates the "death at any time" doctrine as applied to such facts. The concurring opinion finds the intent to give absolute title but avoids the executory devise for a violation of the rule against perpetuities. Great weight is here laid on the fact that the possible intermediate date had been fulfilled.

The present will contains less context to indicate that death of Henderson Brooke Deady "at any time" was fixed in the mind of the testatrix as the date of investment of complete title than does Imbrie v. Hartrampf, supra. If Henderson Brooke Deady had outlived the period of twenty-five years from the death of the testatrix and all the other "conditions, provisions and charges" had been fulfilled, then the case would fit exactly into the situation in the Imbrie case. The Oregon court then would have held that he took a fee and it would not be necessary to determine what the effective date should be, whether in accordance with the "substitutional" or "intermediate date" doctrine.

In this connection, as to the fees granted respectively to the son and grandsons, the restriction on alienation for a period of twenty-five years seems to imply a complete control in the respective devisees after that period, at least. So far at least, the cases are similar.

The fees given to the son on the one hand and the grandsons on the other should be regarded together in order to fix the point of complete investment. Neither should be cut down by construction. Each fee is subject to the same "conditions, provisions and charges". Henderson Brooke Deady's death is mentioned only once in connection with the devolution of the fee and that instance is in the disputed clause seven, itself.

In the clauses relating to the income, it is set forth in item five that a certain dis-

---

[17] Buchanan v. Schulderman, 11 Or. 150, 1 P. 899, and Love v. Walker, supra, each dealt with a remainder over after a life estate, and in each instance the court attempted to discover actual intention of the testator from the context.

tribution is to be made "during the lifetime of my son Henderson Brooke Deady", but this is contradicted by the later limitation of that particular distribution to ten years, and the provision that Henderson Brooke Deady could by will continue the same part of the income to his widow. This carried on the distribution for a period beyond the death of Henderson Brooke Deady and beyond the twenty-five years.

It is to be noted that it is claimed that the will of Henderson Brooke Deady, whereby he transferred his interest in the income to his widow for life, was a construction of the will by him. But the portion which he bequeathed under this power was only the income. Apparently, he acquiesced in the twenty-five year restriction on alienation and believed his widow would receive the income only if he bequeathed it to her. It is certain he accepted the restriction on alienation during his lifetime, but that acceptance would not validate the restriction as matter of law. It seems clear the testatrix intended to recognize the devolution of this portion of the income, whether by incorporation by reference before her death or as a strict exercise of power after her death. Whether valid or not is a different question. Unquestionably, she intended the income to be distributed for twenty-five years, wherever the fee reposed.

The fee given to the grandsons was to be enjoyed by them upon terms which had no relation to the death of Henderson Brooke Deady. This is a convincing argument toward the conclusion that the fee given to Henderson Brooke Deady was upon the same terms. The full enjoyment of the fees respectively relates only to the "conditions, provisions and charges" and is expressly conditioned upon the twenty-five year period.

Mrs. Deady contemplated the death of her son during this period, because in the clause appointing the trustees she made provision for the carrying on of the trust after his death, although he was appointed as a trustee. Again this clearly points to the twenty-five year period which is the outstanding feature of the will.

In arriving at the conclusion that the death of Henderson Brooke Deady "at any time" was not contemplated by the testatrix as the period of distribution of the property allocated to him, the proposition is foreshadowed that there may have been some other date after her own death when she desired the son to come into full enjoyment, or an executory devise to take effect.

■ Where a gift of a fee with an executory devise over upon death of the first taker without children is postponed by an estate for life[18] or for years,[19] or by any other provision which prevents the gift from having full effect,[20] the full enjoyment of the fee or the taking effect of the executory devise is dependent upon this date, according to the decisions of many jurisdictions.

■ This doctrine is a corollary of the principle widely accepted that an "intermediate date" between the death of the testator and the death of the fee donee without children at any time will be selected, unless the will indicates a contrary intention. This later proposition steers between Scylla and Charybdis. It does not prevent the person to whom the fee was given from enjoying it during his lifetime. On the other hand, it avoids the "substitutional" rule which is criticised because of the fact that this interpretation was historically adopted for the purpose of avoiding the "indefinite failure of issue" construction. All in all, the wishes of most testators are best interpreted by choosing an "intermediate date".[21]

[18] Flores v. De Garza, Tex.Com.App. 1932, 44 S.W.2d 909; Matter of Farmers' Loan & Trust Co., 189 N.Y. 202, 82 N.E. 181; Scanlin v. Peterson, 105 Conn. 308, 135 A. 394; Booth v. Eberly, 124 Md. 22, 91 A. 767.

[19] Ensminger v. Grimes, 201 Ky. 494, 257 S.W. 19.

[20] In re Vizelich's Estate, Cal.App., 12 P.2d 993, rehearing 129 Cal.App. 347, 18 P.2d 773; Howard v. Howard's Trustee, 212 Ky. 847, 280 S.W. 156; Gerting v. Wells, 100 Md. 93, 59 A. 177; Boynton v. Boynton, 266 Mass. 454, 165 N.E.

489; Patterson v. Madden, 54 N.J.Eq. 714, 36 A. 273; Van Tilburg v. Martin, 120 Ohio St. 26, 165 N.E. 539.

[21] In Britton v. Thornton, supra [112 U.S. 526, 5 S.Ct. 294, 28 L.Ed. 816], it is said:

"When, indeed, a devise is made to one person in fee, and, 'in case of his death,' to another in fee, the absurdity of speaking of the one event which is sure to occur to all living, as uncertain and contingent, has led the courts to interpret the devise over as referring only to death in the testator's life-time.

Oregon has not squarely accepted either phase of this rule but it is probable that the tendency would be to follow the results, which would be obtained by the application of either.

In Shadden v. Hembree, 17 Or. 14, 18 P. 572, the court found that the testator gave a fee to his son Henry L. Hembree subject to the control of the widow over the property until her remarriage or her death, but if both the widow and the son died before the son became twenty-one years of age, then to a nephew Frank M. Shadden. The testator died in 1876. The nephew died in 1879. The widow died in 1880, without remarriage. The son died in 1884 before he arrived at the age of twenty-one. The writer of the opinion adopted by the court says: "If I am correct in the view that Lycurgus Hembree (the testator) intended that the property in question should go to Frank M. Shadden only in the event that Henry L. Hembree died during the life of his mother, and that Shadden should be living at the time of the occurrence, then the contingency, upon which the limitation over was made to depend never happened; * * * *". The court picks this intention out of the will. But the court held that the son took a fee on the mother's death. In other words, when his enjoyment of the property was complete, he took the fee, and the executory devise failed even though he did not live to be twenty-one. Although the court goes roundabout to arrive at this conclusion, there is little doubt that the correct date of distribution was chosen. This case furnishes a clear precedent against the existence of the "death at any time" rule in this state, where the testator has not expressly set out such an intention.

The dissenting opinion in Love v. Walker, supra, construes the will as creating a trust which was to be fulfilled within ten years after the testator's death, and as creating a fee simple determinable at that date "without lawful issue born alive and living at the time of his death". But the majority as above noted held that the codicil reduced the estate to one for life, so that this doctrine was not adopted by the court.

In the will under construction, however, a fee to Henderson Brooke Deady is given subject to certain "conditions, provisions and charges". Unless, therefore, a clearly valid "intermediate date", consistent with these limitations can be found, no devise over should be given effect, but the primary grant should be absolute. The fees were given to the son and the grandsons, respectively, upon express condition against alienation for twenty-five years. If the title so passed to the sons and the grandsons, respectively, at the death of Lucy Deady, then this fetter could be stricken off by the holder of the title.[22] A restriction on alienation has nothing necessarily to do with the rule against perpetuities. However, the courts apply the same limitations to such a provision if extended over what is considered an unreasonable period of time.[23] While, therefore, the mere restriction upon alienation would not affect the title, a period for taking effect of an executory devise would be limited under the rule against perpetuities.[22]

The Supreme Court of Oregon has held that where a restriction on alienation is imposed upon a fee title, during the entire life of the first taker, an executory devise dependent upon breach of this condition subsequent is void.[24] In the will here under consideration the restriction was for a period of twenty-five years by express condition subsequent. The de-

---

* * * But when the death of the first taker is coupled with other circumstances which may or may not ever take place, as, for instance, death under age or without children, the devise over, unless controlled by other provisions of the* will, takes effect, according to the ordinary and literal meaning of the words, upon death, under the circumstances indicated, at any time, whether before or after the death of the testator."

The Oregon Supreme Court has quoted this case but has not followed it, since the decisions have been controlled by the intention of the testator. See Bilyeu v.

Crouch, supra; Love v. Walker, supra; Kaser v. Kaser, 68 Or. 153, 137 P. 187; Rowland v. Warren, supra; Imbrie v. Hartrampf, supra.

[22] Closset v. Burtchaell, 112 Or. 585, 230 P. 554.

[23] Gray, Perpetuities, Sec. 118a; Pulitzer v. Livingston, 89 Me. 359, 363, 36 A. 635; Colonial Trust Co. v. Brown, 105 Conn. 261, 279, 135 A. 555.

[24] Friswold v. United States National Bank of La Grande, supra. The position is foreshadowed by the dissenting opinion in Imbrie v. Hartrampf, supra.

vise over does not take effect upon breach of the restriction, but upon death without issue. However, the express condition against alienation and the limitation over on death without issue are mutually interdependent. The context makes it improbable that Lucy A. H. Deady intended to deprive Henderson Brooke Deady of the full enjoyment of the fee during his life, although she desired to keep control for a long period. If he had outlived the twenty-five period of restriction and come into full enjoyment, he would have taken the fee title, as above noted. If he died prior to that date, the restriction against alienation would have fettered him during his entire life, and in any event might have denied him freedom of action for a period beyond which a restriction on alienation would be upheld. Since Henderson Brooke Deady took a fee upon the death of the testatrix, restricted by the express condition against alienation, which is void, an executory devise dependent either upon his death without issue during the time when this condition fettered enjoyment or after the expiration of the unreasonable period of twenty-five years would be void.

If, then, a strict application of the rule against perpetuities were made or the rule against unreasonable restriction on alienation affecting the devolution of title, the executory devise of this will is of no validity. The rule against perpetuities deals only with the vesting of estates and not with the enjoyment thereof. But an executory devise which may possibly not vest for a period over twenty-one years is void. This executory devise does not depend on lives in being but upon an arbitrary twenty-five year period. The time so limited, plus the express condition subsequent as to alienation for the period, prevent the devises over to the grandsons from taking effect.

The court, however, does not necessarily hold that the executory devises to the nephews are invalid upon these principles. The search was prosecuted for a valid "intermediate date" after the death of the testatrix without going to the extreme of holding the death of Henderson Brooke Deady "at any time" satisfied the intention.

As noted above, the most probable date of full enjoyment of the fees given respectively to the sons and grandsons was the end of the twenty-five year period during which Mrs. Deady did not desire this Lot One sold or mortgaged. The full enjoyment was circumscribed by "express condition" to that effect as to each parcel thereof.

No other "intermediate date" is possible. The death of Henderson Brooke Deady is not contemplated as the date of taking effect of the executory devise as has already been shown. Even if the lives of all those who had legacies charged against this parcel outlasted the twenty-five years, they might each have died and so the rule would still take effect. But a reading of the document convinces the court that the twenty-five year date was controlling of all other factors. The period of ten years is unquestionably so controlled and simply provides for a different distribution of the income.

The question of whether there was a valid trust arises here, but does not affect the solution.[25] If title in fee was given to the trustees, the trust did not end with the death of Henderson Brooke Deady, because there is a provision for continuance by the Bank afterward. The same difficulties as to the period of distribution by the trustees arise. Here the twenty-five year period still is controlling. An executory devise dependent upon the fee given to trustees for twenty-five years would be invalid. If these trustees took an estate for years, the result would be the same, because an executory devise could not take effect thereafter.[26] The court construes the will, however, as providing trustees to manage the estate, build up a trust fund and to pay out the income in accordance with the directions thereof for a period of at least twenty-five years.

If this conclusion is correct, the limitation upon the income had no effect upon the devolution of the title. The clause of restraint on alienation considered as such is not effective as against the son and grandsons, as holders of the fees of the different parcels. But there is, then, no criterion as to an "intermediate date" for taking effect of the executory devise, except the time when the respective devisees would have come into full enjoyment under the express condition.

The twenty-five year period, then, is the salient factor of the will. The court thus arrives at the conclusion that no valid "intermediate date" can be chosen

---

[25] Closset v. Burtchaell, supra.

[26] See In re Johnston's Estate, 185 Pa. 179, 39 A. 879, 64 Am.St.Rep. 621.

which will give validity to the executory devise. The fee was given. A like fee was given the grandsons. The "conditions, provisions and charges" do not affect the passing of title. The fee should not be cut down, except by a clear expression. There is no clear expression as to an intermediate time for the taking effect of the executory devise. Whether this time be chosen as the time when distribution of the particular property was to be made, or the time when the trustees were to go out of control or when the son and grandsons were to receive the full enjoyment of the respective fees, the result is the same, the executory devise would be invalid, If this, then, were the expressed intention of the testatrix, effect could not be given to it, since the intent offends a rule of public policy.[27]

The rule, formerly supported by the heavy weight of authority and still by respectable modern decisions [28] in the United States, affords a method of carrying out the main intention of the testatrix. Such decisions rule that where a fee is given to be determined upon "death without issue", that in the absence of an expression of a contrary intention in the will, if the original donee outlive the testator, he takes in fee simple absolute; if he "die without issue" during the lifetime of the testator, the gift over takes effect by way of substitution, but not by executory devise.

The existence of this doctrine in Oregon has been denied by implication [29] and by implication affirmed [30] by the Supreme Court of the State. But the intention in this particular will to give the fee is clear. Henderson Brooke Deady was obviously the favorite son. Another portion of the property is given him in fee simple. He is named as the principal legatee. He is one of the residuary legatees. He is chief devisee of the income. He is a trustee under the will. The creation of the trust to pay off the mortgage was an attempt to assure Henderson Brooke Deady of an estate clear of indebtedness at the end of a period of time which the law holds un-

reasonable. But it gives no indication that he was not to have fee title.

The Oregon court have not construed the words "die without issue" to import "indefinite failure of issue", and the probabilities are will never do so. Since the state was not created until 1859 and the older constructions were then passing away, it would seem anomalous in a jurisdiction where entailed estates have never been recognized to do so. But the judges of the common law so held,[31] and earlier there might have been a tendency to follow the majority of American precedent. The tendency of the court at present would be to examine the context of the will and seek a guide to the meaning of the testatrix. If the search for a definite expression failed or the express desire might be against public policy, the court would avoid the consequences of a holding that these words imported "indefinite failure of issue" by use of the "substitutional rule" where, as here, the intent to give a fee to the first taker is clearly expressed. The cardinal factor of the intention of the testatrix would thus be carried out. The preference for early vesting of estates delineated by the decisions of the Oregon court would have its effect. The rule against cutting down a fee given in an early clause of a will has compelling influence and would be thus carried out. If the court looked at the clause as an attempt to create a fee tail in Henderson Brooke Deady the construction would be the same.[32]

Argument is made that the words "subject to" in the third clause prevent this construction, but the court has already noted that the seventh item was not thereby referred to. It is also said that the word "vest" in the seventh item refers to a time after the death of the testatrix, but inasmuch as this word is used in connection with the phrase "I give and devise", it seems more reasonable, all other things being equal, to refer them to the date of the death of Mrs. Deady.[33]

[27] Closset v. Burtchaell, supra, 112 Or. at page 601, 230 P. 554.

[28] In re Gulstine's Estate, 166 Wash. 325, 6 P.2d 628; In re Caldwell's Will, 205 Wis. 587, 238 N.W. 367; Hull v. Hull, 101 Conn. 481, 126 A. 699.

[29] Bilyeu v. Crouch, supra; Rowland v. Warren, supra.

[30] Imbrie v. Hartrampf, supra.

[31] Oregon Laws, 1843, page 100; Oregon Constitution, Article XVIII, Sec. 7; Rowland v. Warren, supra, 10 Or. 129; Barber v. Pittsburgh, Fort Wayne & Chicago R. Co., supra, 166 U.S. at page 83, 17 S.Ct. 488, 41 L.Ed. 925.

[32] Fee tail abolished in Oregon, Sec. 63-105, Oregon Code 1930.

[33] See Fowler v. Duhme, 143 Ind. 248, 42 N.E. 623.

116

The will of the testatrix can be carried out by the application of this doctrine. She intended Henderson Brooke Deady to have a fee. She intended this fee to be subject to the "conditions, provisions and charges" set out. If this construction is carried out the fee will still be subject to these, so far as valid. She intended to control her property far into the future. Therefore, a sale either during a period of twenty-five years by her sons or her grandsons would be contrary to her intention. But this desire to hold the property intact cannot be carried out fully. The construction carries out the will of the testatrix as far as possible.

The suit is brought in time, as the point of attack is not the construction of the will or the\recovery of the property, but an accounting for the income to which plaintiff claims to have been entitled since the death of his mother.

The motion to dismiss is overruled.