Argued February 11, reversed March 4, petition for rehearing
denied April 1, 1959

SCHOMP ET AL *v.* BROWN ET AL
335 P. 2d 847
337 P. 2d 358

*Frank H. Hilton,* Portland, argued the cause for appellant. With him on the briefs was Karl F. Glos, Portland.

*William G. Dick,* The Dalles, argued the cause for respondents. On the brief were Dick & Dick, The Dalles.

Before McAllister, Chief Justice, and Lusk, Warner and Sloan, Justices.

WARNER, J.

This is a suit for a declaratory judgment. It seeks a decree declaring that the defendant Gertrude K. Schomp Brown, under the will of Robert Hugh Schomp, deceased, holds, as trustee, all the property received by her from said testator's estate on final distribution and all property that she might thereafter acquire from the possible sale, hypothecation or other use of said property. It also prays for a further holding that plaintiffs and defendant William Harold Mare are, with her, the beneficiaries of said trust in accordance with the terms of a contract for reciprocal wills made by and between Robert Hugh Schomp, deceased, and the defendant Mrs. Brown, then the wife of the decedent-testator.

The decree of the circuit court impressed a constructive trust upon the property for the benefit of plaintiffs and the defendants Mare and Mrs. Brown. It also enjoined her, as trustee, from transferring any part of the corpus to her husband, defendant Harold M. Brown, or to any other man that she might there-

after marry. From this decree, defendant Gertrude K. S. Brown appeals.

Robert Hugh Schomp and Gertrude K. S. Brown had been married a little more than 25 years when he died on the twenty-eighth day of May, 1954. At the time of their marriage, Mr. Schomp had four children by a prior marriage: Robert R. Schomp, Allie Owens and Margaret Misener, the plaintiffs, and a son George Schomp. George died shortly before his father. The defendant Mrs. Brown is the mother of defendant William Harold Mare, a son by an earlier marriage. It is our understanding that no children were born to the Schomps.

The testator and his wife had accumulated considerable property, to which each had contribued funds in its acquisition. After the sale of their ranch in Wasco county, they moved to Portland. There they purchased real property. At the time of Mr. Schomp's death this was held by them as tenants by the entireties.

In 1947 the Schomps gave attention to making reciprocal wills. The ones then executed were later replaced by the wills which they signed on May 17, 1950. Both wills embodied identical provisions and both members of the marriage signed the will of the other.

We will refer only to those articles of Mr. Schomp's will which have a bearing on our conclusions here. By Article III, he gives a legacy of $25 to each of his four children by his previous marriage. The following Article IV reads:

"IV.

"All of the rest, residue and remainder of my property, wherever situated, real and personal, I

give, devise and bequeath to my wife, Gertrude K. Schomp."

Article V of decedent's will makes provision as to who shall take in the event his wife predeceases him or if they die in a common accident. It follows:

"V.

"In the event my said wife should predecease me, or if we should lose our lives in the same accident, or, if my said wife should die prior to the distribution to her of the assets of my estate, then, in that event, I give, devise and bequeath the said residue as follows:

"Robert R. Schomp, Allie Schultz (also known as Mrs. Lee Owens), George Schomp and Mrs. Robert Misener, who are my four children by a former marriage, and William Harold Mare, who is my wife's son by a previous marriage, are referred to in this and in the following paragraphs of the will as 'children', and all reference in the said paragraph to children shall refer to the five individuals named in this paragraph, and to no other persons.

"In the event of the happening to my said wife of any of the contingencies set forth in Paragraph V of this will, I direct my executrix to divide the said residue of my estate into as many equal parts as there are then children surviving, or who have deceased with issue surviving. One such equal part I give, devise and bequeath unto each of the children who is then surviving, with the further provision that if any of such children shall leave surviving issue, such issue shall take their parents' share by right of representation."

Although the 1950 will of the then Mrs. Schomp is not in the record, her testimony confirms that it followed the identical pattern of her husband's will and would have, had she predeceased him, accomplished the same results they both sought to achieve by execut-

ing mutual wills. This would mean that the surviving spouse would take title to all property of the decedent spouse (except for nominal legacies to children) and under the will of the surviving spouse, the surviving children or the issue of any deceased child would, under Article V, take whatever property the last spouse owned.

■■ The title to real property owned at the time of Mr. Schomp's death was, as we have observed, held by the entireties and, therefore, passed to Mrs. Schomp by operation of law. It constituted by far the greatest element in value of the properties acquired during the marriage. But all parties concede that it was the intent of Mr. and Mrs. Schomp that it was to be treated on the death of the survivor as property subject to distribution or disposition as provided by Article IX. Therefore, if the last surviving spouse left any estate, it would include the real property previously owned by the entireties, if not previously disposed of by the surviving spouse.

After her husband's death, the former Mrs. Schomp married defendant Harold M. Brown on December 26, 1954, and they are now husband and wife. From here on we will refer to the former Mrs. Schomp as Mrs. Brown.

■ The 1950 will of Mrs. Brown was revoked by operation of law upon her subsequent marriage to Mr. Brown. ORS 114.330. But the agreement which underlies the contractual wills of the Schomps is irrevocable if the survivor takes advantage of the provisions made by the other. *Schramm v. Burkhart,* 137 Or 208, 215, 2 P2d 14; *Ankeny v. Lieuallen,* 169 Or 206, 218, 113 P2d 1113, 127 P2d 735. And if breached, any party in interest who suffers thereby has a remedy in an action on the contract. *Van Vlack v. Van Vlack,*

181 Or 646, 666, 668, 182 P2d 969, 185 P2d 575; *Florey v. Meeker,* 194 Or 257, 277, 240 P2d 1177. Such a reciprocal or mutual will, even though revoked, still stands as evidence of the contract. *In re Burke's Estate,* 66 Or 252, 257, 134 P 11; *Van Vlack v. Van Vlack,* supra (181 Or at 667). In this instance we find all the terms of the agreement embodied in Mr. Schomp's will.

■ For the reasons which follow, we find no trust was created by the reciprocal wills nor was it contemplated by the parties to the agreement of 1950.

The touchstone of the common purpose and accord of the Schomps is found in Article IX, which reads:

"This will is reciprocal in its terms with a will this day executed by my said wife, Gertrude K. Schomp, and both wills are made in accordance with the terms of the following agreement between us for the disposition of our property after our deaths; after the death of each of us, the survivor shall not have the right to devise or bequeath the property which shall come to him or her under this will, save in accordance with the terms of the reciprocal wills; although the survivor may, during his or her lifetime, dispose of the said property as he or she may see fit in his or her discretion, except that he or she shall not have the right to increase or decrease the share of any of the above named contingent legatees by gift or other means, direct or indirect."

The foregoing article is clear and unambiguous. It first inhibits Mrs. Brown from making any testamentary disposition of "the property which shall come * * * to * * * her under this will, save in accordance with the terms of the reciprocal wills." Secondly, it confirms in her the right to "dispose of the said property as * * * she may see fit in * * *

her discretion," thus doing no more than declaring rights incidental to the ownership of the fee simple title she acquired under Article IV, supra. There is also the proviso that she shall not "by gift or other means, direct or indirect, increase or decrease the share of any of the   *   *   *   contingent legatees." Because of the reciprocal character of their agreement, this would only apply to the property which came to the surviving spouse under the will.

What are the essential terms of the reciprocal wills governing the disposition of their property? In Article IV we found that the surviving spouse, after the payment of the nominal legacies provided by Article III, takes outright and without limitation or qualification of any kind a fee simple title to "All of the rest, residue and reminder" of the estate of the spouse first dying.

■ It is a well-recognized rule that when an estate in an absolute fee is given in one clause of a will, as in Article IV here, the interest which the devisee there obtains cannot be taken away or diminished by any subsequent or general expressions of doubtful import, or by any inference deductible therefrom that may be repugnant to the estate given. *Irvine v. Irvine,* 69 Or 187, 190, 136 P 18; *Imbrie v. Hartrampf,* 100 Or 589, 597, 198 P 521; *Fields v. Fields,* 139 Or 41, 46, 3 P2d 771, 7 P2d 975; *Howell v. Deady* (1939) (Dist. Ct. Ore.), 48 F Supp 104, 108; 96 CJS 258, Wills § 825; 1 Underhill on Law of Wills, § 358. The foregoing rule finds further expression in ORS 114.230(1).①

If we would adopt the construction of Article IX pressed upon us by plaintiffs and declare that the property devised and bequeathed to Mrs. Brown is subject

---

① ORS 114.230: "(1) A devise of real property is deemed a devise of all the estate or interest of the testator therein subject to his disposal, unless it clearly appears from the will that he intended to devise a less estate or interest."

to a trust or in anywise limit or qualify the very apparent absolute fee which she received under Article IV, it would result in creating a repugnancy which in turn would render Article IX void. *Mattison v. Mattison,* 53 Or 254, 257, 100 P 4; 57 Am Jur 873, Wills § 1320. This conclusion applies with equal force to the construction that plaintiffs place upon Articles VII and VIII which deal primarily with the duties of the nominated alternate executor in closing the estate. To the contrary, we do not find any of the articles mentioned inconsistent but harmonious with the testator's clear intent, and likewise the clear intent of their agreement of May, 1950.

■ Continuing our inquiry, we find in Article V, supra, the provision designating the beneficiaries who take thereunder in the event that the beneficiary named in Article IV shall predecease the testator or if both spouses die in a common accident. Thus, the children referred to in Article V take nothing under the will of either spouse to and until both spouses to the agreement are deceased. Under the design established by Article IX the extent of the estate of the last spouse dying cannot be determined before the date of his or her death.

Articles IV and V, when read with Article IX, make it obvious that the overall purpose of the agreement was to provide for the eventual devolution of the surviving spouse's estate, as to what was received from the first spouse dying, *if any part thereof remained at the time of the survivor's death.* The essence and purpose of the Schomp agreement for reciprocal wills was to insure equality of division between the children named in Article V in whatever remained of their respective estates. The agreement further insured that this equality in ultimate participation would

not be disturbed by the surviving spouse during his or her lifetime by a gift to any one of those children from the spouses' properties, unless a like gift of equal value was given to all. Article IX insures realization of that design if Mrs. Brown leaves any estate at the time of her demise.

Notwithstanding that Mrs. Brown's will of May, 1950, became a nullity upon her remarriage, the obligation to make a new will embodying the provisions relating to the children still continues. The record here gives us no reason to believe that she seeks to avoid this duty. But whether she does or does not make such a will cannot be ascertained until after her death. The children named in Article V, by reason of the agreement between Mrs. Brown and her late husband, have acquired only a right of action to recover damages against the estate of Mrs. Brown if she fails by her last will and testament to fulfill her part of the agreement of 1950. *Schramm v. Burkhart,* supra, at p 213.

Reversed.

On Respondents' Petition for Rehearing

Dick & Dick, The Dalles, for the petition.

Before McAllister, Chief Justice, and Lusk, Warner and Sloan, Justices.

WARNER, J.

Petition for rehearing denied.

We avail ourselves of this opportunity to clarify

a statement made in the original opinion which caused the petitioners some confusion. They refer to the sentence reading: "Because of the reciprocal character of their agreement, this would only apply to the property which came to the surviving spouse under the will." Earlier in the original opinion we stated that the agreement made between Mr. Schomp and his wife was intended to include properties which they held by the entireties. We bring the foregoing quotation in harmony therewith by adding thereto the following: "including the real property previously owned by the entireties, if not previously disposed of by the surviving spouse."