Argued October 4, affirmed October 29, petition for rehearing
denied December 6, 1973, petition for review denied
January 15, 1974

RICKS ET AL, *Respondents, v.* BROWN ET AL
(No. 70-511-E), *Appellants.*
515 P2d 206

*Gene L. Brown,* Grants Pass, argued the cause for appellants. On the brief was R. Gene Smith, Grants Pass.

*Donald F. Myrick,* Grants Pass, argued the cause for respondents. On the brief were Donald H. Coulter, and Myrick, Coulter, Seagraves & Nealy, Grants Pass.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

SCHWAB, C. J.

This is an appeal from a decree of the trial court declaring that the personal representative of the estate of Helen Ricks, deceased, is holding the assets of the estate in trust for the lineal descendants of W. T. Ricks, deceased, and the children of Helen

Ricks, deceased, pursuant to a contractual agreement contained in a joint, mutual and reciprocal will of W. T. and Helen Ricks. The parties agree the sole question presented is whether the contractual provision of the joint, mutual and reciprocal will bound Helen Ricks as the surviving co-testator as to property which passed to her by operation of law and not as a beneficiary under the will. We agree with the trial judge that she was so bound.

The marriage of W. T. and Helen Ricks was a second union for both. Each had issue by a former marriage. They had no children by their marriage. At the time of the execution of the will in question in 1964 the co-testators estimated their joint assets at $45,000 or $46,000. The respective contributions of the two spouses to this joint accumulation cannot be ascertained from the record in this case. The clause of the will which is the subject of the controversy provided:

"Each of us does recite that it is our intention in executing this JOINT, MUTUAL AND RECIPROCAL LAST WILL AND TESTAMENT that the same constitutes a binding contract between us to make the foregoing disposition of our respective estates, and that the foregoing provisions shall be binding upon whichever of us survives the other."

The will may be fairly characterized as leaving all of the joint holdings to the survivor of the two co-testators, and upon the death of the survivor of them a division of the estate of the second spouse to die into two halves, with one half going to the issue of W. T. Ricks and the other half to the issue of Helen Ricks.

After the execution of the will Mr. and Mrs. Ricks loaned monies and otherwise dealt in properties to

augment their joint assets.[①] Most of these transactions were in their joint names with the inclusion of survivorship language.

W. T. Ricks died in January of 1968. No probate proceedings were instituted. With one exception, hereinafter discussed, all of the property, real and personal, of W. T. Ricks and Helen Ricks was owned jointly and with rights of survivorship between them, and that property became the property of Helen Ricks by operation of law rather than through the estate of W. T. Ricks.

Less than four months after W. T. Ricks died, the survivor Helen Ricks made a new will which left substantially everything to her issue—the defendants in this proceeding. The argument of defendants essentially divides itself into three parts:

(1) "A contractual provision, contained in a joint, mutual, reciprocal will, or in a mutual, reciprocal will, which does not express a clear intent that it apply to property acquired by operation of law or survivorship property, is applicable only to property or benefits acquired by the surviving cotestator by reason of the provision of the will or from the estate of the first co-tenant to die."

(2) "The assets of the Helen Ricks estate, having been acquired by operation of law, and not as benefits from the estate of and under the will of W. T. Ricks, are [regardless of intent] not therefore bound by a contractual provision contained in the joint, mutual and reciprocal will of W. T. Ricks and Helen Ricks, dated November 16, 1964."

(3) "Title to all property which is an asset of

---

① At the time the will was drawn in 1964, the joint assets totaled $45,000 or $46,000. W. T. Ricks died in January of 1968. In the spring of 1969 a conservator was appointed for Mrs. Ricks at which time her estate was inventoried at a total of $67,000.

the estate of Helen Ricks passed to her by operation of law, not by virtue of the joint, mutual and reciprocal will of November 16, 1964."

■ As to defendants' first point, we do not agree that the will does not express a clear intent that it apply to all of the property which Helen Ricks owned at her death, regardless of how acquired. On the contrary, we interpret the language of the will, "a binding contract between us to make the foregoing disposition of our respective estates," as evincing a clear and unambiguous intent to have the provisions of the will apply to all assets which either might own at the time of death regardless of how acquired.

Defendants' second contention in effect argues that notwithstanding the intent of the parties a contractual provision such as the one in question here does not apply to survivorship property as distinguished from property passing by virtue of the will. *Schomp et al v. Brown et al*, 215 Or 714, 335 P2d 847, 337 P2d 358 (1959), is to the contrary. There the parties executed reciprocal wills which provided in pertinent part, Article IX:

"* * * [A]fter the death of each of us, the survivor shall not have the right to devise or bequeath the property which shall come to him or her *under this will*, save in accordance with the terms of the reciprocal wills * * *." (Emphasis supplied.) 215 Or at 720.

The court said:

"The title to real property owned at the time of Mr. Schomp's death was, as we have observed, held by the entireties and, therefore, passed to Mrs. Schomp by operation of law. It constituted by far the greatest element in value of the properties acquired during the marriage. But all parties con-

cede that it was the intent of Mr. and Mrs. Schomp that it was to be treated on the death of the survivor as property subject to distribution or disposition as provided by Article IX. Therefore, if the last surviving spouse left any estate, it would include the real property previously owned by the entireties, if not previously disposed of by the surviving spouse." 215 Or at 719.

Under the third contention, defendants argue that since nothing passed from the estate of W. T. Ricks to Helen Ricks by virtue of W. T. Ricks's will, the contract is not binding for want of any consideration.

In support of this contention defendants quote from *Irwin v. First Nat'l Bank,* 212 Or 534, 321 P2d 299 (1958), and *Schramm v. Burkhart,* 137 Or 208, 2 P2d 14 (1931), and conclude from those quoted statements that "[s]ince Helen Ricks did not 'accept any benefits under the will' * * * or 'take advantage of the provisions made by the other' * * * an essential element of the doctrine contended for by plaintiffs is missing." The authorities are far from precise as to the nature and extent of "benefits" they discuss. For example, there are cases in Oregon that refer to benefits of the "agreement" rather than the "will," as this statement from *In re Burke's Estate,* 66 Or 252, 256, 134 P 11 (1913), shows:

> "The contestants cannot try out in this proceeding the question as to whether the wills were mutual and based upon an agreement that the survivor should leave his or her property to a particular person. Such an agreement is valid if performed by the making of such wills and the acceptance by the surviving party of the *fruits of the agreement* * * *." (Emphasis supplied.)

*Accord: Holman et al v. Lutz et al,* 132 Or 185, 208, 282 P 241, 284 P 825 (1930).

There are other cases and authorities which, in dealing with will-contract situations, do not refer to posthumous receipt of "benefits" by the surviving co-testators, but measure the duty of the survivor in terms of the contractual performance given by the decedent; for example:

"It is an established rule that equity will not allow one person to receive advantage under a contract and then refuse to perform his part of the agreement, and that where mutual wills are the result of a contract between the parties making them, which could not be rescinded without the consent of both, and one of them has died and his part of the contract has been carried into execution, equity will not permit the other to violate the agreement but will enforce the contract by declaring the executor, devisee or other person coming into possession of the property which was the subject of the contract to be trustee for those who would have been benefited had the contract been performed * * *." *Schramm v. Burkhart,* supra at 213.

Encyclopedic and textual treatises do not afford descriptions which are much more definitive or illuminating in their terminology; for example, this statement is abstracted from 97 CJS 307-08, Wills § 1367:

"With respect to a surviving spouse's disposition of property in a manner at variance with mutual wills, *the lodestar is the intention of the parties;* the disposition, during the lifetime of a surviving spouse, if not prohibited, must be reasonable. The general rule is that, on the death of one of the parties to an agreement for mutual, joint, or reciprocal wills, leaving a will in accordance with the agreement, the survivor becomes estopped, or precluded, from making any other or different disposition of his property than that contemplated in such agreement, and his obligations under the agreement become absolutely irrevocable, and en-

forceable against him, *at least, or especially,* where he avails himself of provisions of decedent's will in his favor, or accepts any benefits thereunder * * *." (Emphasis supplied.)

██ There has been a great deal of litigation in this field. In all of the Oregon cases brought to our attention in which "benefits" was one of the criteria, property had actually passed by virtue of the will. In any event, we need not here pursue the matter further. In the context of the issue before us, to give "benefits" the interpretation sought by defendants would produce a result contrary to any justice or logic, and one that we do not read any of the authorities as requiring. W. T. Ricks agreed to arrange his affairs so that if he died before his wife she would receive everything he owned upon his death. The defendants would have us say that he did not honor his part of the agreement because he arranged matters so that his surviving spouse was saved the expense of probate. Helen Ricks received in full measure the "benefits" for which she contracted, and was bound thereafter to honor her obligations under the agreement.

█ Furthermore, the record shows that some property did pass from W. T. Ricks to Helen Ricks by virtue of W. T. Ricks's will. At the time of the death of W. T. Ricks there was in existence an unpaid interest-bearing note in the principal amount of $5,000, made payable simply to the order of W. T. Ricks and Helen Ricks, husband and wife. Defendants advert to ORS 93.240 which makes a constructional survivorship in cases of real property sales contracts where the vendors had previously held title to the sold premises as tenants by the entirety. There is nothing in the record which would relate that statute to the note.

Since the note appears negotiable, and the payees are named conjunctively rather than alternatively, the note was payable to both of them jointly, and could be negotiated, discharged or revoked only by both. ORS 73.1160.[②] There was a co-maker to the note. This fact, if it indicates anything, indicates that it was not given as a part of a transaction secured by real property.

*Beach v. Holland,* 172 Or 396, 142 P2d 990, 149 ALR 866 (1943), cited with approval in *Panushka v. Panushka,* 221 Or 145, 349 P2d 450 (1960), holds that a joint tenancy with right of survivorship can be created in personal property. Here, however, no such intent is shown either by the note or other evidence.

■ The record shows the note, which was substantially unpaid at the time of the death of W. T. Ricks, was treated by Helen Ricks as being solely hers. The only way that result could be achieved is by application of the provision of the joint will of the spouses which left all the residue to the surviving spouse. If that be so, then Helen Ricks did receive benefit and assets from the contract and will, because the *chose in action* represented by the note did not pass to her "by operation of law" under survivorship claim.

The non-probate of the will at the death of W. T. Ricks does not militate against this conclusion. *Taylor v. Wait,* 140 Or 680, 690, 14 P2d 283 (1932). Even if we

---

[②] ORS 73.1160 provides:

"An instrument payable to the order of two or more persons:

"(1) If in the alternative is payable to any one of them and may be negotiated, discharged or enforced by any of them who has possession of it;

"(2) If not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them."

were to adopt defendants' theory that "benefits" must flow from the testamentary provisions of the will to make the contractual provision operative, W. T. Ricks's interest in the note was a sufficient "benefit." *See, Schomp et al v. Brown et al,* supra.

Affirmed.