Argued September 18; affirmed October 18; rehearing denied
December 8, 1931; second petition for rehearing
denied February 16, 1932.

## FIELDS ET AL. *v.* FIELDS ET AL.

(3 P. (2d) 771, 7 P. (2d) 975)

*Edward J. Clark,* of Portland, for appellants.

*Paul C. King,* of Portland, for cross-appellant.

*Andrew Koerner,* of Portland (Dey, Hampson & Nelson, of Portland, on the brief), for respondents.

BROWN, J. The issue presented here concerns the intention of the testator in the disposition of his property as evidenced by his last will and testament.

The plaintiffs claim that the estate bequeathed and devised by paragraph 3 of the testator's will was subsequently diminished and cut down by a later provision

of the will. Conversely, it is contended by the defendants that the testator neither intended to cut down, nor did cut down or debase the fee simple estate willed to his wife.

■ In the interpretation and construction of a will, the cardinal rule is to ascertain the intention of the testator from the four corners of the instrument, giving effect, if possible, to every sentence, clause, and word. When so ascertained, the expressed intention, if legal, is the law of the will, the supreme test, the controlling factor: See Thompson, Construction of Wills, § 41. To like effect, see *Gildersleeve v. Lee,* 100 Or. 578 (198 P. 246, 36 A. L. R. 1166); *Roots v. Knox,* 107 Or. 96 (212 P. 469, 213 P. 1013); *Closset v. Burtchaell,* 112 Or. 585 (230 P. 554). Among the many decisions of this court declaring the importance of the foregoing rule, are *Bilyeu v. Crouch,* 96 Or. 66 (189 P. 222), and *Stubbs v. Abel,* 114 Or. 610 (233 P. 852, 236 P. 505). Moreover, when the provisions of a will are susceptible of conflicting interpretations, the extraneous circumstances accompanying its execution may be shown. See the authorities collected in *Stubbs v. Abel,* supra.

The respondents herein assert that the holding of this court in *Irvine v. Irvine,* 69 Or. 187 (136 P. 18), controls the disposition of this suit. In that case the court, speaking through Mr. Justice MOORE, wrote:

"It is a well-recognized rule that where an estate in fee is given in one clause of a will in clear and explicit terms, the interest which the devisee thus obtains in the lands can not be taken away or diminished by any subsequent vague or general expression of doubtful import, or by any inference deducible therefrom, that may be repugnant to the estate given: Underhill, Wills, § 689; *McIsaac v. Beaton,* 3 Ann. Cas. 615, note; *Mee v. Gordon,* 187 N. Y. 400 (80 N. E. 353, 116 Am. St. Rep. 613, 10 Ann. Cas. 172); *Lohmuller v. Mosher,* 74 Kan. 751 (87 P. 1140, 11 Ann. Cas. 469)."

With reference to the cutting down of a gift, 1 Underhill on the Law of Wills says, at section 358:

"Where an absolute gift is given in clear and expressive, or, as sometimes expressed, in positive and decisive language, the rule of construction is that the interest thus given shall not be taken away, cut down, limited or diminished by subsequent vague and general expressions. In other words, any subsequent expression of intention of the testator must, in order to limit the prior gift, be equally clear and intelligible, and indicate an intention to that effect with reasonable certainty."

In support of the foregoing statement, see the many authorities cited by the author in note 3, page 487.

■ That the provisions of paragraph 3 of the testator's will conveyed a fee simple title to Lillie Maud Fields, his wife, is fully established by our code and by a number of court decisions.

In the case of *Lytle et al. v. Hulen et al.,* 128 Or. 483 (275 P. 45), the court, speaking through Mr. Justice BEAN, said at page 506:

"Under our statute, section 9847, Or. L., the term 'heirs' or other words of inheritance, shall not be necessary to create or convey an estate in fee simple; and any conveyance of any real estate passes all the estates of the grantor, unless the intent to pass a less estate shall appear by express terms of the grant: *Ruhnke v. Aubert,* 58 Or. 11 (113 P. 38); *Tone v. Tillamook City,* 58 Or. 385 (114 P. 938); *Love v. Walker,* 59 Or. 95 (115 P. 296); *Irvine v. Irvine,* 69 Or. 189 (136 P. 18)."

In his work on "Construction of Wills," Mr. Thompson says, at section 358:

"Where an estate is created in one part of a will in clear and intellible language, the estate can not be limited or cut down by subsequent vague and unintelligible words; and when a fee is devised by one clause

of the will, and other portions or clauses are relied upon as limiting or qualifying the estate thus given, they should be such as show a clear intention to thus qualify the estate granted. * * * Where, in the same clause, a general devise of real estate is coupled with a general bequest of personal property, such fact sufficiently indicates an intention to devise a fee in the land.''

■ From the foregoing, it is obvious that a devise which, standing alone, would create an estate in fee simple may be limited to a life estate only by the use of words in the will which make it appear that such devise was intended to convey an estate for life only.

According to the theory of the plaintiffs herein, the testator by his will, in declaring it to be his ''wish and desire'' that, ''upon the death of my said wife, Lillie Maud Fields, the remainder of my property devised and bequeathed to her by me that shall be in her possession at the time of her death shall be divided in equal shares between my sons Leroy Russell Fields and Arthur Lewis Fields,'' debased the fee simple title devised to her.

■ It becomes important, then, to determine whether the words ''wish'' and ''desire'' were used in an imperative sense, or whether the matter was left exclusively to Lillie Maud Fields, wife of the testator.

As bearing upon the meaning which attaches to precatory words thus used, and for its value in determining the question here presented, we note the following excellent excerpt from 40 Cyc., pp. 1734, 1735:

''The question whether precatory words, that is, words of expectation, hope, desire, recommendation, etc., will operate to create a trust is purely one of definition, and, where the will itself does not determine the sense in which the testator used them, is one for a lexicographer rather than a judge. If such words are

used in their primary sense, it is obvious, or should be, that they can impose no obligation upon the first taker. If, however, the rest of the will shows that the words are really imperative, and that beneath the veil of courtesy there lurks a positive order, then the trust should be effectuated. In the nature of the thing, this is all the so-called 'law' that this question can involve. But these obvious facts have been overlooked. The courts have been eager to give unnatural and wrongful meanings to words whose significance is commonly well understood, and the result is a hopeless confusion in the decisions, and that utter absence of principle which inevitably follows the abandonment of right principle. However, it is said that, according to the earlier cases, when property is given absolutely to any person, and the same person is, by the giver, who has power to command, recommended or entreated or wished to dispose of that property in favor of another, the recommendation, entreaty, or wish is held to create a trust, if the words are so used that, upon the whole, they ought to be construed as imperative, and if the subject-matter and the objects of the recommendation be certain. The more modern rule, however, is that, in order that a trust may arise from the use of precatory words, the court must be satisfied, from the words themselves, taken in connection with all the other terms of the disposition, that the testator's intention to create an express trust was as full, complete, settled, and sure as though he had given the property to hold upon a trust declared in the ordinary manner. Applying this rule, it is clear that the same words may have wholly different meanings when read in the light of the context. Thus, the expression of a 'wish' may or may not create a trust; and so with 'desire,' and similar words. The question in every case is whether they express merely the testator's wish, or whether they express his will. A trust is created if it clearly appears that the words were used in an imperative sense; but this only where the testator's desires can be ascertained with reasonable certainty, the subject and the object being clear. Sometimes the testator explicitly states the sense in which precatory words are used, and in

such case of course his express intention governs. Where the testator shows that he knows how to create a trust by doing so in clear and apt words in one part of the will, the use of precatory words in another clause is strong evidence that no trust was there intended. *And, where an absolute estate or interest is in terms given, precatory words which follow are usually treated as expressions of wish rather than of will, so that no trust is created."*

In this connection, we note the following from Thompson, Construction of Wills, section 367, p. 495:

"A testator will not be presumed to have intended by subsequent expressions and limitations to cut down or condition a fee simple estate which he has clearly given, unless the language used is susceptible of no other meaning."

In 1 Perry on Trusts and Trustees (6th Ed.), at section 115, the author thus states the rule for interpretation of precatory words used in a will:

"However strong the language of recommendation or request may be, a trust will not be implied if the testator declare that such is not his intention * * *, or if he 'recommends but does not enjoin.' And so a trust will not be implied if such a construction of the precatory words should render them repugnant to, or inconsistent with, other parts of the same instrument. If construing a recommendation or the expression of a wish into a trust would contradict in terms the preceding bequest, a trust will not be implied. As if the gift is absolute, and of all the testator's property, and of both the legal and equitable interest in it, words of recommendation will not cut it down into a trust; or, in the words of Kindersley, V. C., 'Where the later words of a sentence in a will go to cut down an absolute gift contained in the first part of a sentence, and are inconsistent with such gift, the court will, if it can, give effect to the absolute gift.' The same rule was stated by Lord Cottenham thus: 'Though "recommendation" may in some cases amount to a direction and

create a trust, yet that being a flexible term, if such a construction of it be inconsistent with any positive provision in the will, it is to be considered as a recommendation and nothing more.' The flexible term must give way to the inflexible, if the two can not stand together as they are expressed.''

There are a multitude of cases relating to the construction and interpretation of wills. In the recent case of *In re Lee's Estate,* 109 Cal. App 15 (284 P. 948), the California court said, among other things:

''The California courts have adopted the later rule in line with the great weight of authority. * * * The opinion in *Estate of Browne,* 175 Cal. 361, 362 (165 P. 960, 961), aptly states the situation as follows: 'Whatever may be the rule elsewhere, ''it is the settled law in California that precatory words are not to be regarded as creating a trust unless it appear that the testator intended to impose an imperative obligation and to exclude the exercise of discretion on the part of the person to whom the recommendatory words are addressed.'' *Estate of Purcell,* 167 Cal. 176-179 (138 P. 704, 705). This rule is derived from and supported by numerous authorities. [Citing many authorities.]' ''

The appellants there, as here, relied upon the case of *Colton v. Colton,* 127 U. S. 300 (8 S. Ct. 1164, 1167, 32 L. Ed. 138), a case wherein the testator, after making a gift of all his property to his wife, recommended to her ''the care and protection of my mother and sister, and request her to make such * * * provision for them as in her judgment will be best.'' In the Colton case a trust was declared. With reference to the Colton case and its application to the facts in the case before it, the California court said:

''It repeatedly has been rejected in these jurisdictions as out of harmony with this later rule, and in some of the cases it has been distinguished on the narrow ground that the precatory expressions were joined in the same sentence with the words of con-

veyance, and this was taken as an indication of the intention of the testator to create a trust. Any uncertainty as to the authority of the Colton case in this state was set at rest in the *Estate of Mitchell,* 160 Cal. 622 (117 P. 774, 776), where the Supreme Court said: 'If that decision was in any particular inconsistent with our own decisions on the subject, it would not be binding authority. The interpretation of wills is not a question upon which the federal courts control the state courts'."

Concerning the holding in the Colton case, the federal court, in *McDuffie v. Montgomery,* 128 Fed. 105, stated:

"Undoubtedly it [*Colton v. Colton*] was an extreme case, justified, as the court holds, by the circumstances."

The subject of precatory trusts is fully discussed in an elaborate note found in 49 A. L. R., pp. 10 to 103. And, in 70 A. L. R., at page 326, appears a valuable note supplementing the former, in which we find the following observation:

"Later cases reveal a marked tendency to follow this [the later] rule, and bear out the statement in the original annotation concerning the numerical weight of the cases involving precatory words, and now, as then, it is found that the cases in which a trust has been held to exist where a precatory expression was used (citing authorities) are greatly outnumbered by those in which it was held that no trust was created (citing authorities)."

This is not a case where words of recommendation should be deemed mandatory in order to carry out the purpose of the testator: *Beakey v. Knutson,* 90 Or. 574 (174 P. 1149, 177 P. 955). In arriving at the intention of the testator in the disposition of his property by will as evidenced by the instrument itself, we have directed our attention to all the provisions thereof. We have ignored no provision of the will, nor have we given a

controlling significance to any one of its terms. From the facts alleged in the complaint, it is apparent that the members of the family of the testator dwelt together in domestic felicity. There is nothing unnatural in his leaving his property to the woman who had been his devoted wife for many, many years, and had mothered their two sons who had long since attained their majority and were capable of supporting themselves. Indeed, it is but natural. In simple terms, the testator willed to his wife "all the rest, residue and remainder of my property, both real and personal, of whatever description and wherever situated." The language employed in the written instrument is plain. The testator never, by word or deed, cut down or debased the fee simple title thus conveyed to his wife. Conversely, he recognized the title conveyed by paragraph 3, and requested that she, in turn, will the property to their two sons. This request, however, did not partake of the nature of a direction or command.

We have devoted much time to the perusal and study of the many cases cited in the briefs of the appellants. Their industrious and able counsel have left nothing undone. But the meaning of the testator is plainly apparent from the written instrument itself. It follows that this court can not resort to construction in this case.

While we believe and hold that, by the great weight of authority as indicated by the preceding pages, the contention of appellants can not be upheld, yet, under the existing circumstances of the case, the costs and expenses in this and in the lower court should be paid out of the funds of the estate.

The decree sustaining the demurrers to the plaintiffs' complaints is affirmed.

BEAN, C. J., BELT and CAMPBELL, JJ., concur.

Petition for rehearing denied February 16, 1932

ON PETITION FOR REHEARING

(7 P. (2d) 975)

BROWN, J. The appellants have filed a petition for a rehearing, wherein they state, in part:

"The petition of respondent herein is, in effect, a petition for rehearing as to allowance of attorneys' fees. The unjustifiable attack made upon petitioners and their counsel by respondent makes it a point, of honor with counsel that we be accorded by this court a re-examination of our briefs in connection with its opinion herein. We confidently believe that such examination will not only disclose the good faith and merit of our case, but will lead to a vacation of the opinion. The authorities justify such rehearing, and courtesy to counsel in the face of a baseless attack by a litigant who is an ungracious winner dictates that a thorough re-examination of the premises of the opinion be had by this court in bank. We ask no more. We are entitled to no less."

For a statement of the case and the law applicable thereto, see our original opinion. The suit involved the construction of the last will and testament of Lewis Russell Fields, deceased. The paragraphs of the will around which the case revolves are set out in full in our opinion. It is the contention of the appellants that the estate bequeathed and devised by paragraph 3 of the will was subsequently diminished and cut down by a later provision of that instrument, while the respondents contend that the testator neither intended to cut down, nor did cut down or debase, the fee simple estate willed to his wife.

In our original opinion we approved and followed the rule set down in I Underhill on the Law of Wills, § 358, in the following language:

"Where an absolute gift is given in clear and expressive, or, as sometimes expressed, in positive and

decisive language, the rule of construction is that the interest thus given shall not be taken away, cut down, limited or diminished by subsequent vague and general expressions. In other words, any subsequent expression of intention of the testator must, in order to limit the prior gift, be equally clear and intelligible, and indicate an intention to that effect with reasonable certainty."

We again subscribe to this doctrine. We are satisfied that it is in harmony with the great weight of authority.

■ With relation to the costs and expenses incurred by them, the appellants state that, in addition to the amounts set out in cross-appellant's cost bill on file herein, "cross-appellant and appellants incurred the additional sum of $37.50 as the usual and necessary cost of printing a petition and brief for a rehearing herein." This can avail the appellants nothing. Rule 25 of the Rules of the Supreme Court, found in 123 Or. 689, reads:

"No disbursement will be allowed in favor of either party for a petition or briefs on an application for a rehearing."

■ In reference to the claim for attorney's fees by the losing party to this litigation, we direct attention to the holding of this court in the case of *In re Gratton's Estate*, 136 Or. 224 (298 P. 231), to the effect that "the right of an attorney at law to collect compensation for his services depends upon the fact of his employment." Also, see *In re Faling's Estate*, 113 Or. 6 (228 P. 821, 826, 231 P. 148), where we approved and quoted the following from 2 R. C. L., p. 954:

"The creation of the relation of attorney and client by contract express or implied is essential   *   *   *. The essential feature of the professional relation is

the fact of employment to do something in the client's behalf. There must be an agreement, express or implied, for compensation.''

■ In the case of *In re Gratton's Estate,* supra, we quoted with approval the following instructive excerpt from 2 Thornton on Attorneys at Law, § 514:

''It is well settled that the employment of counsel by one of several heirs or legatees will not, of itself, create a liability on the part of the other heirs or legatees for the compensation of the counsel so employed, even though his services were beneficial to all of them, excepting where they have resulted in bringing a fund into court, and, under the local law, attorney fees may be allowed therefrom. Nor will the employment of an attorney by an heir or legatee create a liability on the part of the estate involved.''

See, also, Weeks on Attorneys at Law (2d Ed.), § 339.

No fund was brought into court by the applicants in the instant case. It follows, therefore, that attorney fees cannot be allowed to them out of the estate covered by the will in question. See *Upham v. Bramwell,* 105 Or. 597 (209 P. 100, 210 P. 706, 25 A. L. R. 919).

This is not a will contest, nor does the litigation arise from the use of obscure language by the testator in making his disposition of his real and personal property. After a careful reading and deliberate study of the record and the authorities relied upon by the appellants, we find nothing that would authorize us to hold that the testator said one thing in plain language in his will and at the same time meant to say something else. The will itself stands as the best exposition of its meaning.

Considerable has been said in the petitions on file with relation to the character of the attorneys for peti-

tioners. Doubtless the charges against counsel were made in hot blood and without deliberation. In our original opinion we alluded to the marked ability and industry of appellants' counsel. We have not changed our opinion in that regard. Moreover, we add that we believe counsel to be honorable and upright and conscientious in their labors.

The petition for a rehearing will be denied.

BEAN, C. J., BELT and CAMPBELL, JJ., concur.