Argued April 1, affirmed June 17, petition for rehearing
denied September 10, 1953

# PIONEER TRUST CO. *v.* THIELSEN ET AL.

258 P. 2d 788

*Ray L. Smith,* of Salem, argued the cause for appellants. With him on the briefs were Bruce Spaulding and Wilbur, Mautz, Souther & Spaulding, of Portland.

*Robert W. DeArmond* argued the cause for defendants-respondents Robert B. Thielsen and Jane Thielsen Bacagaluppi. On the brief were Young & DeArmond, of Salem.

Before LATOURETTE, Chief Justice, and WARNER, BRAND, TOOZE and PERRY, Justices.

WARNER, J.

This is a suit brought by Pioneer Trust Company, a corporation, as trustee under the last will and testament of Jennie B. Thielsen, deceased, for a construction of that instrument. The defendants, Frederick D. Thielsen and Ellen B. Thielsen DeWitt, alone appeal.

Jennie B. Thielsen died July 9, 1934. Her will of April 2, 1932, was duly probated in Marion county, Oregon, and her estate long since closed.

Mrs. Thielsen had four children. They are the defendents H. William Thielsen, Frederick D. Thielsen and Ellen B. Thielsen DeWitt, the latter two being the appellants, and her son, Edward W. Thielsen, who died September 9, 1950. His surviving issue are his son, Robert D. Thielsen, and his daughter, Jane Thielsen Bacagaluppi, hereinafter referred to as Robert and Jane. Both are over the age of 25 years. The children of the decedent's living sons, Frederick and H. William, are also joined as defendants. Mrs. DeWitt has no children.

The will which is the subject of our inquiry consists of six major articles. The First provides for the payment of the estate indebtedness; the Second article devises her Salem residence, her furniture and personal effects and the income for life from stock in a certain

life insurance company to her daughter Ellen, with the remainder over to the testatrix' three sons and their heirs; the Third article provides for miscellaneous gifts of furniture and personal effects to friends and relatives; the Fifth article is the residuary clause; and the Sixth article nominates testatrix' executors.

The Fourth article, and the only one with numbered subsections, devises a certain parcel of income-producing real property situated in Salem to Ladd & Bush Trust Company (plaintiff's predecessor) in trust for the uses and purposes therein stipulated. This is the article which gives rise to plaintiff's suit for construction and, because of the justiciable controversy prevailing between the trustee and the appealing defendants concerning the propriety of the construction accorded by the circuit court, becomes the focal point of our interest.

We quote only those subsections of the Fourth article which are relied upon by the parties as giving support to their respective contentions or by us in arriving at our conclusions, and we will summarize the others. In this manner the provisions of the Fourth article will be found to be:

"I give, devise and bequeath to Ladd & Bush Trust Company of Salem, Oregon, an Oregon corporation, all my real property situate at the Northeast corner of Court and Capitol Streets in Salem, Oregon, [describing it particularly] said property and the rents, issues and profits thereof being hereinafter referred to as the 'trust estate', IN TRUST, nevertheless, for uses and purposes as follows:-

"(1) To manage and handle said property; to rent and lease the same, and to collect the rentals therefor, and after making payment of the taxes thereon and the upkeep thereof to pay, as hereinafter provided, the net income from said property

to the persons herein specified to take the same, and to convey and transfer the corpus of said trust estate with the accumulations, if there are then any, as hereinafter provided.

"(2) The Trustee shall pay the entire net income received from said trust estate and available for distribution, in monthly or other convenient installments, to my four children, H. William Thielsen, Frederick D. Thielsen, Edward W. Thielsen and Ellen B. Thielsen, share and share alike, during their respective lives; provided, however, that the Trustee shall also pay to my daughter Ellen B. Thielsen the one-half part of said net income distributable to my son Edward W. Thielsen until such time as such payments shall pay and discharge a debt of $1100.00 and interest thereon due to Ellen B. Thielsen from Edward W. Thielsen.

"(3) Upon the respective deaths, either before or after my death, of my said sons my Trustee shall convey and transfer in fee to the surviving issue of such deceased son, per stirpes, freed from this trust, the one-third part of the trust estate; provided such issue has attained the age of twenty-five years, and the Trustee shall continue under this trust the respective proportionate shares of such of said issue as shall not then have attained the age of twenty-five years, paying to said issue the income of their respective proportionate shares of the trust estate until they arrive at that age, and upon such issue respectively attaining the age of twenty-five years, the Trustee shall transfer and deliver in fee and free from this trust, to such issue their respective proportionate shares of said trust estate; provided, however, that no issue born to any of my children after the date of this will shall share in the trust estate or the income therefrom, and if there be such issue so born after this date, then I give to each of such issue and direct that there be paid from my trust estate to each thereof the sum of ONE DOLLAR ($1.00).

"(4) Should any of my said sons die either before or after my death leaving no surviving lawful issue born to such son, then and in that event the right herein given to such deceased son and his issue shall pass to and be the property of my daughter Ellen B. Thielsen and my surviving sons, share and share alike, subject, however, to all the provisions and limitations herein provided for in the event that all my said sons should leave issue; provided, however, that should my daughter, Ellen B. Thielsen die leaving no issue, then her interest herein, on said contingency, shall be paid and delivered to the surviving issue of such of my sons as shall die leaving issue entitled to participate in this trust.

"(5) [This subsection renders the several beneficial interests unassignable and places them beyond the reach of the beneficiaries' creditors.]

"(6) The Trustee may, in its discretion, pay to, apply or use for the benefit of any of the aforesaid issue of my children while under the age of twenty-five years such amounts from principal or income of their respective shares as it may deem advisable for the proper education, maintenance and support of such issue, or any of them, and to provide for such issue in sickness or distress.

"(7) The Trustee shall not sell or convey, except in discharge of this trust and on the termination thereof the trust estate or any part thereof without the consent of a majority of my children living at the time of such proposed sale, but if only two be living then the Trustee may, in its absolute discretion, sell the trust estate or any portion thereof with the consent of one. In the event of the sale of said real property prior to the time of the termination of this trust, then my Trustee shall take and receive the purchase price and invest and re-invest the same in such securities and/or property as in its judgment shall be safe and sound, and the net income therefrom shall be paid and applied and the corpus distributed in the same

manner and to the same persons as hereinbefore provided for distribution. * * * [Here provisions follow exonerating the trustee for and authorizing investments in securities, none of which are here questioned.]

"(8) [This subsection avoids conflict with the rule against perpetuities.]

"(9) It is my purpose and intention in creating this trust to provide for the members of my family in the shares and proportions and on the contingencies herein referred to, that is to say, to provide an income for my three sons and daughter during their lives and to provide for the distribution thereafter of the corpus of this trust estate to the issue, born prior to the date of this will, of said sons, and if any of said sons shall die without issue that my daughter Ellen B. Thielsen shall participate with my surviving sons in the income of the share that otherwise would have gone to the son so deceased, and to provide for the ultimate distribution of said trust property to the issue born at this time of my said sons."

This appeal resolves the controversy into one between the children of the testatrix' deceased son Edward, on the one hand, and her son Frederick and daughter Ellen, on the other. The position of her other son, H. William, is one of apparent neutrality.

The defendants, Robert and his sister Jane, as the sole surviving issue of Edward W. Thielsen, contend that under subsection 3 they are now entitled to the distribution of a one-third part of the corpus in fee, freed from the trust estate created by their grandmother's will.

Frederick Thielsen and Mrs. DeWitt claim that the will, by subsection 2, devised to them and their brothers, Edward and H. William, a life estate in trust with the income to be divided equally among the survivors of

Jennie B. Thielsen's four children. They lean heavily upon subsection 9 to supplement their position.

If the position of Edward's children is correct, then the corpus of the trust estate and the income therefrom will be progressively diminished as each son of the testatrix dies and leaves issue surviving who are 25 years or older. If, however, the thesis of the appellants should prevail, then the corpus will remain intact until the death of the testatrix' last remaining child, with progressively increasing moieties of income accruing to each surviving child upon the prior death of any of testatrix' children.

■■ In interpreting the language of a will, a liberal construction is applied in order to discover the testator's true intention. *Kerr v. Duvall,* 62 Or 470, 472, 125 P 830. We are not unmindful, however, that in ascertaining such intention, we must incline to a construction which will, if possible, result in giving a harmonious effect to every part of the will; but in so doing "* * * We cannot adopt a policy of dialysis, taking here a part and there a part of the document, and base our conclusions on any single clause. We must assume that by everything he put into the writing the testator meant something and had a purpose for his utterances. * * *" *Beakey v. Knutson,* 90 Or 574, 577, 174 P 1149, 177 P 955. When the circumstances permit, a construction should be given to all words, clauses and provisions of the instrument, if they are not inconsistent with each other or with the general intent of the whole will when taken by its entirety, unless the court is satisfied that no special effect was intended to be given to a particular word or phrase. *Hale v. Cooke,* 142 Or 23, 28, 18 P2d 808; *Adkinson v. Blomquist et al.,* 128 Or 211, 214, 274 P 312; *Gildersleeve v.*

*Lee,* 100 Or 578, 584, 198 P 246, 36 ALR 1166; 57 Am Jur, Wills, 723, § 1129.

When an apparent inconsistency is raised by implication only, the implication should be very conclusive before it is employed. *Bramell v. Cole,* 136 Mo 201, 37 SW 924, 58 Am St Rep 619, 623. Where the words of one part of the will are capable of a two-fold construction, the construction to be adopted is that which is most consistent with the intention of the testator as ascertained by other provisions of the will. *Watters v. First Nat. Bank of Mobile,* 233 Ala 227, 171 So 280, 286; *Covenhoven v. Shuler,* 2 Paige Ch 122, 21 Am Dec 73, 77; 57 Am Jur, Wills, 722, § 1128.

There is no occasion for construction where the meaning is clear and there is no ambiguity in the language of the will. The court will not seek to read into a will an intent different from that expressed therein. *Heimbigner et al. v. U. S. Natl. Bank,* 190 Or 592, 597, 227 P2d 827; *Schramm v. U. S. Nat. Bank of Portland,* 151 Or 693, 701, 52 P2d 181; *Fields v. Fields* 139 Or 41, 52, 3 P2d 771, 7 P2d 975.

Within the ambit of these rules we will proceed to examine the controverted instrument.

We think that the testatrix clearly contemplated a progressive diminution in the corpus of the trust, occasioned from time to time by the death of her three sons and in the manner provided in subsection 3, and a consequent pro tanto reduction in the income from the trust for distribution to the living beneficiaries named in subsection 2. It will be observed that under the subsection just referred to, the income distributable is (1) net income which is (2) "available for distribution". The last phrase is not without significance. One of the valid explanations for its employment is found

in subsection 1 where, among other things, the trustee is expressly mandated "to convey and transfer the corpus of said trust estate *with the accumulations, if there are then any,* as hereinafter provided." (Italics ours.) In short, all parties taking their respective shares of the corpus in fee under subsection 3 at the same time take their corresponding share of net income, if any, which the trustee may then be holding in anticipation of payment to their ancestor on the dates fixed for the next occurring "monthly or other [time of] convenient installments".

Thus, upon the happening of such a contingency, i.e., the death of one of the male income beneficiaries named in subsection 2 at a time before the date fixed for the next income distribution, it is possible that the trustee may have accumulated income which would have ordinarily been payable in part to such a deceased beneficiary had he been alive at the next succeeding date of the periodic distributions. This was a contingency that the testatrix clearly foresaw. Upon such a happening, the trustee would be holding net income which would not in its entirety be "available for distribution" to the living donees named in that subsection.

Another, and very cogent, explanation for the use and particular meaning of the words "available for distribution", found in subsection 2 and there applied as a limitation on the distribution of any of the net income in the hands of the trustee, is made evident from a reading of subsection 6. This subsection vests the trustee with adequate power, in the exercise of its discretion, to apply for the use and benefit of the surviving children of any deceased son, while such grandchildren are under 25 years of age, such amounts of

income from their share as the trustee "may deem advisable for the proper education, maintenance and support of such issue \* \* \* and to provide for such issue in sickness or distress." Not only is the trustee thus authorized to divert income for such purposes but, in so doing, it will necessarily reduce the amount "available for distribution" to any of testatrix' children named in subsection 2.

The powers vested in the trustee by subsection 6 are significantly greater than those we have already mentioned. To accomplish the same objectives in behalf of such grandchildren then under the age of 25 years, the trustee may also make such payments "from principal \* \* \* of their respective shares", thus making it possible that their respective shares in the corpus will be entirely exhausted or greatly diminished under the provisions of this subsection, prior to the distribution of their shares in fee as directed by subsection 3, when they attain the age of 25. Subsection 6, standing alone, is a powerful contradiction to the claims here made by the appellants. When we read subsection 6 and subsection 3 together, they give warrant to the further conclusion that Mrs. Thielsen's solicitude for her grandchildren was equal to, if not greater than, that she evidenced for any of her four children in the Fourth article, none of whom are entitled to look to an invasion of the corpus of the trust as a medium for the relief of any of the necessitous conditions which will permit a diversion of the trust's capital for the use and benefit of the testatrix' grandchildren.

We find no inconsistency or repugnance between the provisions of subsections 1, 2 or 3. To the contrary, it is our conclusion that they are coordinate and harmonious.

We are told by this interpretation that if Mrs. DeWitt outlives all her brothers and they all die with issue surviving, she will be denied any income from the trust corpus for the reason that the corpus will have then entirely disappeared, if distributions are made under subsection 3 in the manner and at the times contended for by the defendants Robert and Jane. This is a possible contingency which we cannot avoid by adopting what we conceive to be the more or less tortured construction of the Fourth article tendered by the appellant son and daughter of the decedent. To do so would necessitate reading into the will an intent different from that expressed by the testatrix. The testatrix apparently contemplated just such a contingency and sought to temper its impact, if not equalize what might otherwise appear as favoritism for her sons to the disadvantage of her daughter. This is made evident to us by the provisions of the Second article of the will wherein Mrs. DeWitt is given her mother's home place in Salem, her household furniture and personal effects and the income for life on ''all stock owned by me in the California Western States Life Insurance Company''.

The appellants read subsection 7 as rendering ''practically nugatory her [the testatrix'] directions in subsection 3'' and express grave concern that the reduction of the corpus by the transfer of shares to children of deceased sons will result in a forced sale of the original corpus to the disadvantage of the surviving donees of the income reserved under subsection 2. We do not so read subsection 7 and find no conflict between it and subsection 3. Moreover, it does not follow that when the children of Edward W. Thielsen enter into possession of their undivided one third of

the property as tenants in common with the trustee, a partition or sale will result, thereby threatening to destroy or minimize the value as an investment of the other two thirds vested in the trustee. However, if a sale in partition is the result and the trustee is unable to find a comparable investment for its share of the avails, it is but a logical consequence of such a tenancy which we cannot speculate on or attempt to circumvent. We must conclude that it was one of the probabilities which the testatrix foresaw. There is evidence here which gives support to that conclusion. At the time of Mrs. Thielsen's death in 1934, the instant trust property was producing a gross monthly return of $125. The then net return is unknown. We submit that the net return, whatever the amount, was not a large enough gift to her four children, share and share alike, to indicate any great concern on her part whether the property might ever be sold by a partition sale, nor indeed does it indicate any design that it would ultimately supply a complete or substantial income for any one of them.

■ Appellants' apprehension concerning a possible partition sale springs not from what their mother knew or could have known concerning the property's future value but is rather largely premised on the fact that the property *now* enjoys a gross monthly rental of $700. " * * * It is not, however, for the court to speculate upon what he might have done if the exact situation which has arisen had been in his mind when he made his will, but to determine the meaning of the words actually used and to apply that meaning to the facts presented. * * *" *In re Shepherd's Estate,* 152 Or 15, 36, 41 P2d 444, 49 P2d 448.

The last provision of importance in the Fourth article challenging our consideration, and the last in

order governing the disposition of the trust, is subsection 9. Here the appellants look for what they claim conclusively supports their position. In their brief they say:

> "It seems as though the testatrix must have anticipated that the question of interpretation which we have before us would arise and she, therefore, sought to clarify her intention by the above brief statement of her purpose [referring to subsection 9]. * * *"

They stress that part of that subsection reading: " 'It is my *purpose* and *intention* * * * to provide for the members of my family * * * an income for my three sons and daughter during their lives and to provide for the distribution thereafter of the corpus of this trust estate * * *.' "

■ The appealing defendants also argue that if an irreconcilable conflict is found to exist, then the provisions of subsection 9 should prevail over those of subsection 3. In support of this, we are cited to two rules taken from Rood, Wills 2d ed. The first rests on § 425 and reads: "If two clauses are absolutely irreconcilable, the last prevails." The second, from § 420 of the same text, is to the effect that "The main purpose and general intent prevail over the particular provision when they cannot be reconciled." After stating the rule cited in Rood, Wills, as § 425, the author adds:

> "This rule is based on the assumption that what the testator wrote last expresses his last wish; but *it is a highly artificial assumption, to be applied only as a last resort,* when the clauses cannot otherwise be given any effect for incurable uncertainty. * * *" (Italics ours.)

Both rules from Rood as given above are applicable only when a reconciliation cannot be effected between

two or more provisions in the instrument and, therefore, must fail when applied here, for we are persuaded that there is no want of harmony between subsection 3 and the overall expressions of intent found in subsection 9. Appellants in their argument completely ignore certain significant words in the latter provision which bring what is there said into full accord with the provisions of the subsection preceding it. It will be noted that the first clause of this subsection reads: "It is my purpose and intention in creating this trust to provide for the members of my family in the shares and proportions and *on the contingencies herein referred to,* that is to say * * *." (Italics ours.) The question immediately arises: Is "herein" limited to what is said in subsection 9, or has it a broader meaning, that is, comprehending all contingencies specified in the Fourth article, of which subsection 9 is but a part? We believe it is to be read as including any contingency provided for in any subsection of that article for the reasons which follow.

No "shares and proportions" are thereafter referred to in subsection 9, and no contingency is therein indicated after the words "that is to say" which informs the trustee of the quantitative proportion of the income shares nor the disposition of any share which might be reserved to any son or daughter after his death, nor does it lay down the moieties of the several beneficiaries upon the ultimate termination of the trust. To supply this lack, we must read the words "and on the contingencies herein referred to" as referring to the Fourth article as a whole and not as circumscribing the meaning of the words "herein referred to" so as to limit inquiry to the contents of subsection 9 for a discovery of the "contingencies" which the testatrix

had in mind. Therefore, such "contingencies" as may be set out in any of the preceding subsections of the Fourth article necessarily encompass the debated contingency found in subsection 3, namely, the direction that the trustee on the respective deaths of the testatrix' sons "convey and transfer in fee to the surviving issue of such deceased son * * * freed from this trust, the one-third part of the trust estate".

Even if we give countenance to appellants' theory concerning the import of subsection 9, we find therein words which plainly and clearly contradict the position they take, for it will be noted that under subsection 9, the right of the defendant Ellen DeWitt (formerly Ellen B. Thielsen) to participate in any share of the income previously enjoyed by a deceased brother is a contingent one. This is made so by the following phrase: "* * * if any of said sons shall die without issue that my daughter Ellen B. Thielsen shall participate with my surviving sons in the income of the share that otherwise would have gone to the son so deceased * * *." In this respect it is repetitious of the pattern provided by subsection 4.

■ There is another reason for declaring that the rule extracted from Rood, Wills, 2d ed, 361, § 425, is inappropriate here. We cannot sustain the contention that because subsection 9 is the testatrix' last expression with reference to the administration of the trust estate, it must prevail over the preceding subsections. A will is to be construed in accordance with the intention of the testator garnered from a reading of the whole instrument rather than from the position of or language used in any particular clause of it. *Stein v. U. S. National Bank,* 165 Or 518, 522, 108 P2d 1016.

■ It is obvious that appellants' thesis, if applied

here, would diminish the quality of the estate conferred upon the surviving issue of any of testatrix' deceased sons under subsections 1, 3 and 6. In *Fields v. Fields,* supra, we quoted with approval the following from 1 Underhill, Law of Wills, 487, § 358:

> " 'Where an absolute gift is given in clear and expressive, or, as sometimes expressed, in positive and decisive language, the rule of construction is that the interest thus given shall not be taken away, cut down, limited or diminished by subsequent vague and general expressions. In other words, any subsequent expression of intention of the testator must, in order to limit the prior gift, be equally clear and intelligible, and indicate an intention to that effect with reasonable certainty.' "

Also see Thompson, Construction of Wills, 480, § 358. Such a clarity of testamentary intention is not manifest in subsection 9.

The decree of the circuit court is affirmed.