Argued March 11, affirmed July 2, petition for rehearing
denied July 30, 1958

CROW ET AL *v.* STROME ET AL

327 P. 2d 414

*William Huey* and *Clyde N. Johnston,* Eugene, argued the cause and filed briefs for appellants.

*Charles O. Edwards* and *Ronald W. Husk,* Eugene, argued the cause for respondents. With them on the briefs were Harris, Butler & Husk, Vernon D. Gleaves and James C. Goode, Eugene.

Before PERRY, Chief Justice, WARNER, McALLISTER and SLOAN, Justices.

WARNER, J.

This appeal arises in the matter of the trust estate of Joseph Strome, deceased. It has its origin in the final and supplemental reports of the respondent Glenn S. Strome under the last will and testament of said Joseph Strome, deceased, wherein he petitions for a determination of claims of all parties, an approval of his accounts, a termination of the trust and authority to distribute the estate assets to those persons who the court shall decree as entitled thereto. From a decree directing distribution of an accumulation of net profits to the personal representatives of testator's deceased widow and making certain allowances as attorney and trustee fees, Ruby Thompson Crow and Sophie Evelyn Harpole appeal.

In response to citations served, all parties hereinafter named filed answers to the petition and reports of the trustee.

Joseph Strome, a resident of Junction City, Oregon, on November 15, 1934, executed the instrument which was later probated as his last will and testament. It provided for the trust estate that is the subject of this appeal. At the time of his death, on December 20, 1936, he left as his heirs, his widow, Lizzie Strome, the ap-

pellants, Ruby Thompson Crow and Sophie Evelyn Harpole, children of an earlier marriage, and Gillis Strome, a son, issue of his marriage to Lizzie Strome.

The respondent Vina Pomeroy is a daughter of Lizzie Strome by a prior marriage and claims nothing under the will.

The First National Bank of Junction City, Oregon, was nominated trustee of the testamentary trust created. On December 7, 1937, by action of the circuit court of Lane county, Mr. W. C. Washburne was named as trustee in lieu of the bank to act upon termination of his administration of the decedent's estate. From the time of the closing of Mr. Strome's estate, Mr. Washburne, therefore, functioned as trustee and continued in that office until his death on September 26, 1941. Thereafter, at the request of Mr. Strome's widow, her son, the respondent Gillis Strome, and the appellants, Mrs. Crow and Mrs. Harpole, as all of the heirs of Joseph Strome, deceased, the respondent Glenn S. Strome was, on November 10, 1941, duly and regularly appointed successor trustee to Mr. Washburne.

The corpus of the trust at that time consisted of farm lands and a few articles of farm equipment of nominal value. It was from these farm properties that all of the income was derived during the existence of the trust.

It seems appropriate to note here that Glenn S. Strome, the trustee, is a relative of Joseph Strome, but with no claim or interest in Joseph Strome's estate or in the trust, except such as the court allowed for his services rendered as trustee.

The report and petition of the trustee, filed February 17, 1955, and the supplemental report, filed February 28, 1955, purport to cover in itemized detail

his receipts and disbursements from the date of his appointment down to and including February 28, 1955. They reveal, as of that date, that the trustee had at hand the sum of $31,436.87, in cash, which included $200 received by him in settlement of a fire insurance claim. The remainder, i.e., $31,236.87, represented accumulated and undistributed net income from the trust estate. He also reported some 155 tons of barley and oats, part of the 1954 crops which had not yet been sold.

No charges of irregularity in the trust administration are made by any of the parties. So far as we are informed, the reports and the records of Mr. Glenn S. Strome's stewardship stand as a tribute to his integrity and careful management of the properties entrusted to him.

The will made the following provision for the termination of the trust estate and distribution of assets:

"Upon and at the time of the death of my said wife, Lizzie, this trust shall ipso facto cease and determine and the entire trust estate shall go and be, by said trustee, conveyed, transferred and delivered, in fee, to the then living issue of my body, if any, per stirpes and by right of representation; provided, that in the event no child of mine or other descendant of mine survives the termination of this trust, then said trustee shall convey, transfer and deliver in fee all the corpus of said trust estate to my next living heirs at law, according to the present laws of succession of the State of Oregon."

Lizzie Strome died intestate on September 11, 1954. Gillis Strome, her son, was shortly thereafter appointed administrator of his mother's estate. In addition to Gillis, she left the respondent Vina Pomeroy as her sole heirs.

The testator's only living issue at the time of Lizzie Strome's death were appellants Mrs. Crow and Mrs. Harpole, and their half-brother, the respondent Gillis Strome. There is no contest between these three named parties as to their respective fractional interests in the corpus of the trust estate on final distribution.

During the course of Glenn Strome's trusteeship, he failed to deliver to Lizzie Strome from month to month or quarterly: "The entire net income received or derived from the trust estate" as directed by subparagraph B of the "Third" provision of the will. Instead, he paid her varying amounts, ranging from $50 per month to larger figures and made some payments directly to others. They were for charges incident to her needs and comforts. But he never disbursed to Mrs. Strome the entire net income available to her on a given date. As a result, there was gradually accumulated in his hands a separate fund which we shall for convenience call "undistributed net profits." The trustee's account disclosed that this amounted to $31,236.87, in cash, and some 135 tons of rental grain not then sold.

It is this item of undistributed profits which is the heart of this appeal. If, as the appellants contend, it is a part of the corpus of the trust, then its ultimate distribution will be included in the division which the remaindermen, Mrs. Crow, Mrs. Harpole and Gillis Strome will take as the only living issue of Joseph Strome. But if, on the other hand, we conclude in accordance with the representations of the respondents, and as did the trial court, that Lizzie Strome was the owner of these undistributed profits at the time of her death, then the title to that fund passes to her estate, free of the claims of the appellants and for

ultimate distribution in equal shares to the respondents Gillis Strome and Vina Pomeroy, as her only issue.

██ In response to the rule which admonishes that the intention of the testator be ascertained from a consideration of the instrument as a whole and not from its disjointed fragments or particular clauses (*Wemme v. First Church of Christ, Scientist,* 110 Or 179, 190, 219 P 618, 223 P 250; *Pioneer Trust Co. v. Thielsen,* 199 Or 206, 221, 258 P2d 788), we have made such an examination of Mr. Strome's last testament. As a result, we are of the opinion that it clearly and plainly indicates that his wife, Lizzie, was the object of the testator's greatest concern and solicitude. This is expressed in terms usual and conventional for the accomplishment of testator's design and in form so clear and free of ambiguities that recourse to rules of construction becomes unnecessary. *Fields v. Fields,* 139 Or 41, 52, 3 P2d 771, 7 P2d 975; *In the Matter of the Estate of Herbert C. Howe,* 190 Or 592, 597, 227 P2d 827.

The foregoing conclusion respecting Mr. Strome's concern for his wife is made particularly manifest by the following provisions:

"The entire net income received or derived from the trust estate shall go and be paid monthly or quarterly to my beloved wife, Lizzie, for and during her life."

And in the paragraph immediately following:

"If in the absolute and uncontrolled discretion of said trustee the net income from the trust estate should not be sufficient to provide the reasonable needs and comforts of my said wife, during any period, or periods of her illness or other wants or necessities, said trustee may, and it is hereby authorized and empowered, but it shall in no event

be required so to do, and as often as it shall deem necessary, pay to or use, apply or expend for the use and benefit of my said wife such portions of the principal of the trust estate up to and including the whole thereof, as said trustee in its absolute discretion may determine to be adequate to provide for my said wife in such period or periods."

We will refer to the last-quoted paragraph as the emergency clause.

We doubt if the testator could have stated his intention in more positive and unequivocal terms, or made his directions with respect to the disposition of the net income in language more mandatory.

Thus, there was secured to her: (1) the entire net income, without any limitation upon its use when received, and if the income proved insufficient, (2) by the emergency clause, so much of the corpus as might be necessary to insure provision for her comforts and necessities.

The inclusion of this emergency power to invade the principal to the extent necessary to provide for the needs and comforts of his wife if the trust net income proved insufficient, is cogent evidence that consideration of her welfare was paramount to the testator's interest in his children as potential remaindermen. It negatives any contention which the appellants make to the contrary. An inescapable concomitant of a use of the emergency clause was the inherent possibility of a complete exhaustion of the trust's capital properties during Mrs. Strome's lifetime with nothing available for distribution to his issue when she died. This conclusion assumes the proportion of greater practical reality and possibility foreseen by the testator when we take into account the value of the farm property in 1936 and its then relatively modest income. His death

occurred shortly after the depression of the 1930's when the land was appraised at $32,858.

However, the net income available proved to be greatly in excess of what his widow required to provide for all of her wants. She knew of its existence, although she did not know the exact amount from time to time but she did know there was plenty for "whatever she wanted." She had also been told by the trustee that she could always "come and get money" if what he was giving her was insufficient. There is no record that she ever made a demand upon him for more and no suggestion that she suffered in any way. Aside from monthly or quarterly payments made directly to her, the reports reveal that the trustee made substantial payments to others for Mrs. Strome's use and benefit. In the year 1954, beginning in June and for the months preceding her death in September, the trustee laid out $1,503.65 for hospital, nursing and medical expenses incurred by Mrs. Strome. The practice of the trustee in this respect was known to and approved by her son, Gillis, and the appellants.

In the "Third" paragraph creating the trust, we find the stipulations relating to the powers and duties of the trustee in the administration of the trust. This includes the following:

"Said trustee is hereby vested with absolute and uncontrolled discretion and power to determine what shall constitute principal of the trust estate or the gross income therefrom, or net income available for distribution under the terms of this trust and it may also, at its discretion, improve any real property subject to the trust, build, alter, or repair any improvements thereon, of such character, amount, cost, and from such funds or property subject to this trust as it may deem advisable."

This is one of the two provisions in which the appellants take their greatest comfort and which they make the cornerstone of their argument. They stress the words vesting the trustee "with absolute and uncontrolled discretion and power to determine what shall constitute principal of the trust estate or the gross income therefrom, or net income available for distribution * * *." The other is found in the emergency clause where like words of seeming unbridled power and discretion are used and to which we will make further reference.

The foregoing clause does nothing more than empower the trustee to maintain the original corpus of the estate intact as to value or to amplify the original corpus, as may be necessary in the trustee's judgment, to insure a net income for the testator's widow. It is consonant with many of the usual obligations which the law imposes on any trustee, independent of the provisions there made, and also with Mr. Strome's obvious intent to maintain the estate at a corpus level which will produce "net income" for his wife. But it in no sense vests the trustee with power to divert or use the "net income," once determined by him, in any manner which would diminish or impair the beneficiary's absolute right thereto or interest therein.

The appellants employ these words of power and discretion and the language found in the emergency clause as a limitation upon Lizzie Strome's right to take: "The entire income received or derived from the trust estate." They argue that clothed, as the trustee is, with such large powers of discretion, he could within the amplitude of such powers and should, as they construe the testator's intent, have confined his payments to the reasonable needs and comforts of Lizzie Strome during any period or periods of her illness or other

wants or necessities. Consistent with their construction, they insist that the trustee did not breach the terms of the trust in withholding a part of the net income from Mrs. Strome, but, on the other hand, in so doing was fulfilling precisely the testator's intention.

■ We hold that the widow's right to take the entire net income is absolute and unconditional. The provision conferring an "absolute and uncontrolled discretion" upon the trustee to supplement the "entire income" is found in the separate paragraph, which we have described as the emergency clause. It is there the trustee is empowered to invade the corpus, but only when "the net income from the trust estate should not be sufficient to provide the reasonable needs and comforts * * * during any period, or periods of her illness or other wants or necessities." The clause respecting her "needs and comforts" is the measure of his right to divert estate capital for her use. It is a power which can only be employed when the net income paid at the time stipulated under the preceding clause proves insufficient. In short, the provision relied upon by appellants as making the trustee the sole judge of the widow's needs, is, in fact, an emergency power, designed to insure that Mrs. Strome would never be in need, even though it consumed the remaindermen's entire prospective estate to accomplish that result.

The very fact that the trustee in a separate and following paragraph is granted the discretionary power to invade the principal of the trust for supplemental aid to Mrs. Strome adds much to the weight of the absolute and unequivocal character of his command to pay her the entire net income in monthly or quarterly periods, and without restriction as to how to use it.

■ Notwithstanding the language conferring upon

the trustee "absolute and uncontrolled discretion and power to determine what shall constitute principal of the trust estate or the gross income therefrom, or net income available for distribution," his power of discretion is not as unbounded as the appellants seem to imply from the words employed by the testator. The courts will control and reverse or correct an unreasonable exercise of the discretionary powers conferred:

Professor Scott says in 2 Law of Trusts (2d ed), 1374-75, § 187:

"* * * Even where the trustee has discretion, however, the court will not permit him to abuse the discretion * * *. The extent of the discretion may be enlarged by the use of qualifying adjectives or phrases such as 'absolute' or 'uncontrolled.' Even the use of such terms, however, does not give him unlimited discretion. * * *"

In 4 Bogert, The Law of Trusts and Trustees, 178, § 811, we read:

"* * * The courts will examine the exercise of the discretion by the trustee to see that no arbitrary decisions have been made and that the effect of the action of the trustee is not to frustrate important trust objectives."

The trustee in his report refers to the undistributed net balances for each year as "undistributed income" and as a fund "accumulated from the income of said trust." In the exhibits appended to his report for the receipts and disbursements of each year of his administration, these annual balances appear as funds remaining after the gross income has been reduced not only by the expenses incident to the operation of the trust estate, but also by the disbursements made by him directly to Mrs. Strome or for her use and benefit during each particular year. Therefore, it would be

more correct to call them, as they in fact are, that portion of the net income remaining undistributed to Mrs. Strome or as we have earlier used the term "undistributed net profits."

We do not gainsay Glenn Strome's good motives in handling the net profits as he did. So far as the record before us shows, Mrs. Strome did not suffer for want of more than was actually disbursed in her behalf. Although she did not know the extent of the accumulations, she was informed by the trustee, as we have previously noted, that there was enough to take care of her for "whatever she wanted."

■ But good faith on the part of the trustee or failure upon the part of the beneficiary to demand more of the net income than she received cannot exonerate the trustee from breach of his trust nor impair the beneficiaries' interest in the net income which he accumulated but did not disburse.

■ When the income from a trust estate is payable to a beneficiary for life or for a designated period, the trustee is under a duty to pay such beneficiary the net income. He has no right to hold and accumulate it to pay at a later date. His duty is to pay it at the time stipulated in the trust instrument. 2 Scott, The Law of Trusts (2d ed), 1350-51, § 182; 1 Restatement 467, Trusts § 182. Also see *Hartman v. Pendleton,* 96 Or 503, 523, 186 P 572, 190 P 339, 8 ALR 904; *Collins v. Collins,* 168 Or 666, 126 P2d 512.

■ By reason of the clear and absolute direction to pay the entire net income to Mrs. Strome as the life beneficiary, she became the equitable owner of a vested interest in the net income during her lifetime. 54 Am Jur 92, 93, Trusts §§ 100, 102. When a trustee, as here, is under a duty to pay money immediately or unconditionally to the beneficiary, the beneficiary can maintain

an action at law to enforce payment. 2 Scott, The Law of Trusts, supra, 1493 § 1981; 1 Restatement 522, Trusts § 198(1); *Pitcher v. Rogers' Estate,* 199 Mich 114, 165 NW 813, 815; *Cavanagh v. O'Connor,* 189 Iowa 171, 176 NW 881, 883.

Prior to the determination of the amount of net income due the beneficiary, her rights, although vested, are in a sense inchoate in character, but when once determined and declared, as has been annually done by the trustee in the instant trust, they assume the nature of a liquidated account, subject to payment on demand by the beneficiary during her lifetime, on or after the time that the same are made payable under the trust instrument, that is, monthly or quarterly, and in the event of his refusal to pay, with a right of action to enforce the same.

■■ The same rights repose in her personal representatives in the absence of a testamentary direction to the contrary as to any amounts of net income which accrued prior to her death and which were not received by her. ORS 121.020; 2 Jaureguy and Love, Oregon Probate Law and Practice, 209 § 728.

The appellants also object to the awards made as additional trustee's fees and as attorney's fees, but from our examination of the record we find both just and reasonable.

Affirmed.